UNITED STATES of America, Plaintiff,

v.

A & N CLEANERS & LAUNDERERS, INC., Ben Forcucci, Marine Midland Bank, N.A., Jordan W. Berkman, John A. Petrillo, Joseph Curto and Mario Curto, Defendants.

MARINE MIDLAND BANK, N.A., Third-Party Plaintiff,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, St. Paul Mercury Insurance Company, Utica Mutual Insurance Company, The North River Insurance Company, United States Fire Insurance Company, Third-Party Defendants.

No. 89 Civ. 6865 (RWS).

United States District Court, S.D. New York.

Sept. 20, 1990.

---

Phillips, Lytle, Hitchcock, Blaine & Huber (Robert E. Glanville, of counsel), Buffalo, N.Y., for third-party plaintiff Marine Midland Bank, N.A.

James S. Rowen, New York City, for third-party defendant Utica Mutual Ins. Co.

## OPINION

SWEET, District Judge.

Third-party defendant Utica Mutual Insurance Company ("Utica") has moved to dismiss the third-party claim of third-party plaintiff Marine Midland Bank, N.A. ("the Bank") for lack of subject matter jurisdiction.[1] Because the claim falls within the court's pendent party jurisdiction, the motion is denied.

*The Facts*

The United States filed the underlying complaint on October 16, 1989, seeking recovery under § 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607 (as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub.L.No. 99–499, 100 Stat. 1613), for costs incurred to clean up toxic chemicals allegedly released by the defendant A & N

---

**1.** Although Utica has framed its motion as one for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, it appears more properly to be a motion to dismiss under Rule 12(b)(1).

Cleaners & Launderers, Inc. ("A & N") which are suspected of having contaminated the groundwater supply for the community of Brewster, New York.[2] The Bank is made a defendant under CERCLA as the operator of the premises from which the chemicals were allegedly released.

On February 16, 1990, the Bank, a New York corporation, brought a third-party action against its insurers, including Utica, seeking indemnification for any losses suffered in the primary suit. According to the Bank, third-party defendants Utica and United States Fire Insurance Company ("U.S. Fire") are New York corporations, while the other third-party defendants, St. Paul Fire and Marine Insurance Company, St. Paul Mercury Insurance Company, and North River Insurance Company are all citizens of other states.

Utica asserts that there is no independent basis for federal jurisdiction over the Bank's claim against it, and that any assertion of ancillary or pendent party jurisdiction must fail in light of *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). Therefore, Utica seeks to have the Bank's claim dismissed for lack of subject matter jurisdiction.[3]

*Discussion*

It is axiomatic that every cause of action in a federal court must have a jurisdictional basis. An assertion of federal jurisdiction must meet both a constitutional and a statutory standard: the claim must first of all be within the scope of Article III, and Congress must have exercised its constitutional authority to confer jurisdiction on the federal courts. *See Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 372, 98 S.Ct. 2396, 2401–02, 57 L.Ed.2d 274 (1978).

In the present case, since all of the Banks's third-party claims are based on state law, there is no federal question jurisdiction under 28 U.S.C. § 1331. Nor is there diversity jurisdiction under 28 U.S.C. § 1332, because the Bank and Utica (and U.S. Fire) are all citizens of New York. The only basis for federal jurisdiction over these claims is the doctrine of "pendent party" jurisdiction, as claims which are related to the underlying CERCLA complaint.

◼ Pendent jurisdiction in general is an exception to the strict requirement of explicit statutory authorization for federal jurisdiction. It permits the court to extend its reach beyond the limits set by Congress, provided that it remains within the boundaries of Article III.

> Pendent jurisdiction, in the sense of judicial *power,* exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made or which shall be made, under their Authority ...," U.S. Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case."

*United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (emphasis, brackets, and ellipsis in original). The required relationship exists if the state and federal claims "derive from a common nucleus of operative fact." *Id.* However, the existence of the required relationship between the claims does not end the inquiry, for

> [i]t has consistently been recognized that pendent jurisdiction is a doctrine of dis-

---

**2.** 42 U.S.C. § 9607(a) provides, in part:
> [A]ny person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of ... shall be liable for ... all costs of removal or remedial action by the United States...."

**3.** U.S. Fire has not joined the present motion, although from the allegations of the Bank's complaint it appears that it stands in the same position as Utica with respect to the motion. Of course, the court must, on it own, satisfy itself

that subject matter jurisdiction exists over all of the claims of the complaint. *See, e.g., Republic of the Philippines v. Marcos,* 806 F.2d 344, 352 (2d Cir.1986), *cert. dismissed sub nom. Ancor Holdings, N.V. v. Republic of the Philippines,* 480 U.S. 942, 107 S.Ct. 1597, 94 L.Ed.2d 784 *cert. denied sub nom. New York Land Co. v. Republic of the Philippines,* 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987). For the reasons given with respect to the claims against Utica, jurisdiction also exists over the claim against U.S. Fire.

cretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present, a federal court should hesitate to exercise jurisdiction over state claims....

*Id.* at 726, 86 S.Ct. at 1139 (footnote omitted).

There are two distinct types of pendent jurisdiction which a federal court may assert. The more common one is "pendent claim" jurisdiction—"jurisdiction over non-federal claims between parties litigating other matters properly before the court." *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 2006, 104 L.Ed.2d 593 (1989). Generally, if a plaintiff with a pendent claim can meet the *Gibbs* "common nucleus of operative fact" standard then the discretionary factors of judicial economy, convenience, and fairness will also support consolidated resolution of the claims, and the court will assert pendent jurisdiction. *See, e.g., Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Ismail v. Cohen*, 899 F.2d 183 (2d Cir.1990); *State of New York v. Shore Realty Corp.*, 759 F.2d 1032 (2d Cir.1985).

The second type of pendent jurisdiction is "pendent party" jurisdiction—"jurisdiction over parties not named in any claim that is independently cognizable by the federal court." *Finley*, 109 S.Ct. at 2006. Because this type of jurisdiction involves bringing new parties into a forum which admittedly lacks jurisdiction over the claims against them, it is less certain that it will promote judicial economy, convenience, and fairness to the litigants. As a result, courts have generally been more reluctant to assert pendent party jurisdiction than pendent claim jurisdiction. *See, e.g., Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Finley.*

In contrast to the pendent claim situation—in which the existence of a constitutionally sufficient relationship between the claims is sufficient to give the court the power over the claim, *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138—when faced with a pendent party situation, the Court "will not assume that the full constitutional power has been congressionally authorized, and will not read jurisdictional statutes broadly." *Finley*, 109 S.Ct. at 2007. "Before it can conclude that [pendent party] jurisdiction exists, a federal court must satisfy itself not only that Article III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence." *Aldinger*, 427 U.S. at 18, 96 S.Ct. at 2422. *See also Kroger*, 437 U.S. at 377, 98 S.Ct. at 2404–05.

■ Thus, following *Finley*, a court analyzing a pendent party situation must consider: (1) whether the claims satisfy the *Gibbs* "common nucleus" test; (2) whether the statute conferring federal jurisdiction for the primary claim "expressly or by implication" prevents the exercise of jurisdiction over the pendent claim; and (3) whether the considerations of judicial economy, convenience, and fairness to the litigants favor having the court decide all of the claims together. *See also 640 Broadway Renaissance Co. v. Cuomo*, 714 F.Supp. 686, 690 (S.D.N.Y.1989) (under *Finley*, three-tiered analysis must be applied to determine pendent party jurisdiction).

### A. Constitutional Authority

■ In the present case, the CERCLA claim against the Bank and the Bank's claims for indemnification "derive from a common nucleus of operative fact," as *Gibbs* requires. 383 U.S. at 725, 86 S.Ct. at 1138. The question of the insurers' duty to indemnify the Bank is related to the issue of the Bank's underlying liability, even though it also involves issues of interpretation and application of the contracts of insurance. Impleader of insurers by means of a third party complaint is an accepted and approved form of third party practice in this circuit. *See, e.g., Dery v. Wyer*, 265 F.2d 804 (2d Cir.1959).

Further support for this conclusion comes from the Federal Rule of Civil Procedure themselves. Under Rule 14(a), a

defendant may implead "a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Of course, under Rule 82, the rules "shall not be construed to extend or limit the jurisdiction of the United States district courts." The fact that Rule 14(a) contemplates impleader of an indemnitor does not permit the Bank to evade the *Gibbs* constitutional standard. Nevertheless, 14(a) indicates that the drafters of the Rules considered the issues of indemnification and insurance to be sufficiently related to the underlying issues of liability that they should be tried as part of the same case.

## B. Statutory Authority

Once the *Gibbs* standard has been met, the next step is to consider the federal statute which grants jurisdiction in the underlying action. Jurisdiction over CERCLA cases is conferred on the federal courts by § 113(b): "Except as provided in subsections (a) and (h) of this section, the United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter, without regard to the citizenship of the parties or the amount in controversy." 42 U.S.C. § 9613(b). Because there is no express negation of pendent party jurisdiction, the crucial question is whether a grant of jurisdiction over "all controversies arising under" CERCLA operates as an implied negation of jurisdiction over non-CERCLA claims against parties not involved in any of the CERCLA claims.

In *Aldinger*, the Supreme Court held that the relevant consideration was whether "Congress has addressed itself to the *party* as to whom jurisdiction pendent to the principal claim is sought." 427 U.S. at 16, 96 S.Ct. at 2421 (emphasis in original). The Court held that the jurisdiction-conferring clause of 28 U.S.C. § 1343, which covered "any civil action authorized by law to

be commenced," implied that pendent party jurisdiction was not available, because non-federal causes of action against new parties were not "authorized by" federal law. *Id.* at 17, 96 S.Ct. at 2421–22. Following similar reasoning, the *Kroger* Court held that because the federal diversity statute, 28 U.S.C. § 1332, clearly defined the scope of federal jurisdiction by reference to the parties involved, the statute could not support jurisdiction over claims involving non-diverse parties. *Kroger*, 437 U.S. at 373–77, 98 S.Ct. at 2402–05.

■ Most recently, in *Finley*, the Court once again confirmed that the particular jurisdiction-conferring language is of primary importance, holding that the Federal Torts Claims Act ("FTCA") could not support pendent party jurisdiction, because the statute defined jurisdiction by reference to the parties involved:

> The FTCA, [28 U.S.C.] § 1364(b), confers jurisdiction over "civil actions on claims against the United States." It does not say "civil actions on claims that include requested relief against the United States," nor "civil actions in which there is a claim against the United States"— formulations one might expect if the presence of a claim against the United States constituted merely a minimum jurisdictional requirement, rather than a definition of the permissible scope of FTCA actions.

*Finley*, 109 S.Ct. at 2008.[4]

Since *Finley*, the Second Circuit has had occasion to consider the problem of pendent party jurisdiction in *Roco Carriers, Ltd. v. M/V Nurnberg Express*, 899 F.2d 1292 (2d Cir.1990). The plaintiff brought an admiralty suit to recover for loss of cargo and sought to join a claim against the trucking company which had transported the cargo to the dock. Because the second action was based solely on state law, jurisdiction

---

**4.** Utica argues that *Finley* requires that pendent party jurisdiction *only* exists where the underlying federal statute affirmatively grants it (Third–Party Defendant's Brief at 6–7). This assertion overstates the case. *Finley* merely re-

affirmed the *Aldinger* requirement that the underlying statute must not expressly or impliedly *deny* jurisdiction over pendent parties. *Finley,* 109 S.Ct. at 2007–09.

was based on pendent party jurisdiction.[5] Jurisdiction for the admiralty claim was based on 28 U.S.C. § 1333(1), which confers jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction."

After discussing post-*Finley* cases from other circuits in which pendent party jurisdiction was rejected under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51, 56,[6] and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e),[7] and was upheld under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1330,[8] the court noted that the admiralty language "does not contain a limitation as to a certain category of parties, as does the FTCA and the FELA. Nor does it contain a limitation as to a certain category of claims. Rather, it creates jurisdiction over an admiralty 'case.'" *Roco*, 899 F.2d at 1296.[9]

In considering the CERCLA jurisdiction language at issue here, § 9613(b), the grant of jurisdiction over "controversies arising under" CERCLA, is more like the grant of admiralty jurisdiction over any "case" in admiralty than it is to the party-oriented jurisdiction language of the FTCA or FELA. Nowhere does § 9613(b) speak of the particular *claims* which are to be allowed in federal actions, nor does it specifically address the *parties* involved in the claims. *Cf. Bruce v. Martin*, 724 F.Supp. 124, 130 (S.D.N.Y.1989) (suggesting that *Finley* forecloses pendent party jurisdiction only under statutes which confer jurisdiction over claims against particular parties). Therefore, following *Finley* and *Roco*, pendent party jurisdiction is available under CERCLA. *See also New Jersey*

*Department of Environmental Protection v. Gloucester Environmental Management Services, Inc.*, 719 F.Supp. 325 (D.N.J.1989) (also finding pendent party jurisdiction under CERCLA).

Further support for the conclusion that CERCLA does not implicitly foreclose pendent party jurisdiction comes from the statute itself. Section 9613(f)(1) provides that

> [a]ny person may seek contribution from any other person who is liable under section 9607(a) of this title, during or following any civil action under section 9606 or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by federal law.

42 U.S.C. § 9613(f)(1). Utica correctly points out that this section does not apply to the present claim, because Utica is not itself "liable under section 9607(a)" (see n. 2, *supra*). Nevertheless, the affirmative grant of jurisdiction over certain types of indemnification claims does not, as Utica argues, indicate a congressional intention to *limit* jurisdiction over third-parties (Third-Party Defendant's Brief at 11). Rather, this section is designed to merely to *clarify* the court's power over third-party claims. Section 113(f) was added to CERCLA by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub.L. No. 99–499, 100 Stat. 1613 (1986). As the legislative history makes clear, "[Section 113(f)] *confirms* a Federal right of contribution or indemnification for persons alleged or held to be liable under [CERCLA].... *This provision allows all*

---

**5.** *Roco* is therefore distinguishable from the present case because there the *plaintiff* sought to join non-federal claims against new parties, whereas here the defendant Bank does so. If anything, this distinction weighs in the Bank's favor here, because it an unwilling litigant in the federal forum in the first place.

**6.** *Lockard v. Missouri Pac. R. Co.*, 894 F.2d 299 (8th Cir.1990)

**7.** *Iron Workers Mid–South Pension Fund v. Terotechnology Corp.*, 891 F.2d 548, 551 (5th Cir. 1990).

**8.** *Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404 (9th Cir.1989).

**9.** The Second Circuit's only other post-*Finley* case which even mentions *Finley* is *Staffer v. Bouchard Transportation Co.*, 878 F.2d 638 (2d Cir.1989), in which the court stated that "pendent party jurisdiction apparently is no longer a viable concept." 878 F.2d at 643 n. 5 (citing *Finley*). As there was no analysis or discussion of *Finley* and as the decision in *Staffer* turned on entirely different grounds, the court's remark can only be considered dicta, particularly in light of the *Roco* court's subsequent analysis of the issue.

*counterclaims, cross-claims, and third-party actions to be dealt with in a single action if the court is so inclined."* H.R. Rep. No. 253, 99th Cong., 1st.Sess., pt. 1, at 79–80 (1985), *reprinted in* 1986 U.S.Code Cong. & Admin. News 2835, 2861–62.[10] Far from suggesting that Congress meant by implication to preclude pendent party jurisdiction under CERCLA, this history strongly supports the conclusion that such jurisdiction should be allowed.

### C. Discretion

The final step in the analysis is to determine whether the *Gibbs* discretionary factors favor the exercise of pendent party jurisdiction. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139; *see also 640 Broadway Renaissance*, 714 F.Supp. at 690; *Bruce v. Martin*, 724 F.Supp. at 130 (S.D.N.Y.1989). Because diversity jurisdiction exists over the Bank's claims against three of its insurers, those claims will proceed in the federal forum regardless of whether the claim against Utica is dismissed. In this situation, allowing the Bank to litigate all of its third-party claims in one proceeding will not adversely affect judicial economy, and will promote convenience and fairness to all of the litigants.

### Conclusion

Applying the three-step test enunciated by the Supreme Court to the question of whether pendent party jurisdiction exists over the Bank's third-party claim against Utica, the answer is affirmative. The claim arises from a nucleus of operative fact common to the underlying CERCLA claim. Furthermore, the jurisdiction-conferring language in CERCLA does not expressly or impliedly negate this court's assertion of pendent party jurisdiction. Finally, discretionary factors weigh in favor of accepting jurisdiction over the claim so that all of the Bank's insurance claims may be tried in a single proceeding. Utica's

motion for dismissal because of lack of subject matter is therefore denied.

It is so ordered.

---

**10.** Utica's reading of this history as "demonstrat[ing] that Congress considered third-party practice, ... but *limited* the new federal right of action to claims involving parties liable or potentially liable under CERCLA" (Third–Party Defendant's Brief at 11–12) is, to say the least, somewhat strained—perhaps even a bit overzealous.