**FIRST INTERREGIONAL EQUITY CORPORATION, a New Jersey corporation, Plaintiff,**

v.

**Gabriel F. HAUGHTON, an individual, Gerard Cahill, an individual, Victor Lombardi, an individual, Stanley Schwartz, an individual, Merlin Baines & Co., Inc., a Delaware Corporation, OTRA Clearing, Inc., a wholly-owned subsidiary of OTRA Securities Group, Inc., a Delaware Corporation, John Whiteside, an individual, Hassan Growney Co., formerly doing business as Castleton–Rhodes, Inc., a New York Corporation, Gateway Bank, a connecticut Corporation, Raymond T. Bogert, an individual, Jules Lipow, an individual, and Warren Schreiber, an individual, Defendants.**

**No. 91 Civ. 0143 (RWS).**

United States District Court, S.D. New York.

Oct. 28, 1992.

---

Orrick, Herrington & Sutcliffe, New York City (Robert D. Popper, Eileen M. Clavere, of counsel), for plaintiff.

Shamberg Marwell Cherneff Hockerman & Davis, P.C., Mt. Kisco, N.Y. (P. Daniel Hollis, III, Geraldine N. Tortorella, of counsel), for defendant Gateway Bank.

## OPINION

SWEET, District Judge.

Defendant Gateway Bank ("Gateway") has moved to dismiss the counts against it in the Third Amended Complaint of First Interregional Equity Corporation ("First Interregional") for lack of subject-matter jurisdiction and failure to state a claim pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. For the reasons set forth below, Gateway's motion is denied.

*Parties*

First Interregional is a New Jersey corporation with its principal place of business in Short Hills, New Jersey. It is a broker-dealer licensed by the Securities Exchange Commission ("SEC") and a member of the National Association of Securities Dealers, Inc. ("NASD").

Merlin Baines & Co. ("Merlin Baines") is allegedly a Delaware corporation with executive offices in Massapequa Park, New York. Victor Lombardi ("Lombardi") is its president.

Gerald Cahill ("Cahill") is allegedly an investment banker who transacts business in New York, New York.

Stanley Schwartz ("Schwartz") is allegedly an attorney who was licensed to practice in the State of New York.

Hassan Growney Co. is allegedly a New York corporation which does business as a broker-dealer in the Southern District of New York. It is the successor to Castleton–Rhodes, Inc. ("Castleton–Rhodes"). Jules Lipow ("Lipow") was a principal at Castleton–Rhodes in December 1989 and January 1990.

OTRA Clearing, Inc. ("OTRA"), is allegedly a wholly-owned subsidiary of OTRA Securities Group, Inc. ("OTRA Securities"). OTRA Securities is a Delaware corporation doing business in the Southern District of New York. OTRA is a member of NASD.

Gabriel Haughton ("Haughton") was allegedly a director of Decisive Ventures, Inc. Decisive Ventures at one point acquired all the outstanding common stock of Stonehill Publishing, Inc., a company allegedly controlled by Cahill.

Gateway Bank ("Gateway") is allegedly a bank organized under the laws of Connecticut with a place of business in South Norwalk, Connecticut. Raymond T. Bogert ("Bogert") was a vice-president of Gateway Bank.

### Prior Proceedings

First Interregional filed its first Complaint on December 28, 1990, within a year of the alleged fraud (so as to come within the one-year/three year statute of limitations under 10(b); see Ceres Partners v. GEL Assoc., 918 F.2d 349 (2d Cir.1990)), but did not serve any of the Defendants at that time. It filed its First Amended Complaint on April 16, 1991, and served it on all of the Defendants except Haughton. Gateway Bank moved to dismiss the federal securities laws violations against it in July 1991, while First Interregional moved to amend that complaint in August 1991. Gateway Bank consented to the filing of a Second Amended Complaint in October

1991, and then renewed its motion to dismiss. All federal claims against Gateway were dismissed on April 30, 1992.

First Interregional filed a Third Amended Complaint on May 20, 1992, alleging that Gateway was negligent in its hiring, retention and supervision of Bogert and that, because Bogert acted as an agent with the apparent authority of Gateway Bank, Gateway is liable under the doctrine of vicarious liability, or respondeat superior. Gateway has moved to dismiss on the grounds that this court has no supplemental jurisdiction over these state-law claims and that First Interregional has failed to state a claim upon which relief could be granted.

### Facts

The Defendants are alleged to have defrauded First Interregional out of several hundred thousand dollars by manipulating the price of shares of Merlin Baines common stock, a "penny stock". The facts of the alleged scheme were stated in the prior opinion and familiarity with them is assumed, but for clarity's sake a certain amount of repetition is necessary. Since the plaintiff's version of the facts must be accepted as true on a motion to dismiss, these facts are taken entirely from the pleadings submitted by First Interregional and do not represent any findings of fact by this court.

Lawrence Doherty ("Doherty") was a registered representative of First Interregional. On December 13, 1989, he allegedly received a phone call from Lombardi in which Lombardi told Doherty that he and a number of other persons intended to execute a trade under SEC Rule 144, 17 C.F.R. § 230.144.[1] Doherty told Lombardi that he could offer a competitive commission on the sale, but that he would not execute the trade until the Rule 144 paperwork was complete.

Lombardi called Doherty again on December 18, 1989, to discuss this paperwork further, and to introduce Cahill, whom he described as his business partner, to Doher-

---

1. SEC Rule 144 governs certain sales of unregistered securities, and its provisions are designed to prevent distributions of stock without the public disclosure of financial information.

ty. The following day, First Interregional received restricted stock certificates, Merlin Baines's 10K and 10Q reports, account information, and other Rule 144 paperwork from the shareholders. First Interregional first learned that the security involved was Merlin Baines common at that time.

On December 20, 1989, Doherty told Cahill and Lombardi that First Interregional needed legal opinions stating that the stock being offered complied with Rule 144. Cahill and Schwartz, who was identified as Merlin Baines's corporate counsel, called Doherty back and assured him that legal opinions would be delivered that afternoon. Later that day, Schwartz faxed a single legal opinion letter to Doherty. Doherty, in turn, sent the letter to Alex Brown, First Interregional's clearing broker. Alex Brown rejected the letter, informing First Interregional that a group letter was not appropriate, but instead that a separate Rule 144 legal opinion letter was required from each individual shareholder who was selling stock. Doherty called Schwartz at Castleton–Rhodes and told him of this development.

On December 21, 1989, Schwartz allegedly called Doherty and told him that individual opinion letters would be sent that day. At four o'clock in the afternoon, Schwartz faxed a legal opinion from Castleton–Rhodes's office for one of the shareholders that appeared to comply with the requirements for transfers under Rule 144. First Interregional received a legal opinion letter for another shareholder that day as well.

Believing the paperwork to be in order, First Interregional sold 2,100,000 shares of Merlin Baines stock at $0.02625 per share and 588,000 shares at $0.00105 per share on December 21. The contra-broker for the trade was at Rimson & Co., and First Interregional believes the contra-broker immediately sold the 2,688,000 shares to Castleton–Rhodes.

Doherty apparently requested the original copies of the opinion letters from Schwartz and Cahill on December 22, 1989. Doherty informed them that the letters had to be sent to Alex Brown by December 28, the settlement date. Schwartz and Cahill assured Doherty that they would send the letters to First Interregional immediately, though by December 27, 1989, First Interregional still had not received the letters. Doherty continually requested the letters between December 26, 1989, and January 8, 1990, and Cahill continually assured Doherty that he would deliver them.

Cahill allegedly purchased 10,000 shares of Merlin Baines stock at $0.625 per share on December 27, 1990, through First Interregional. On January 4, 1990, Cahill purchased 4,000 shares of Merlin–Baines from Rimson in two separate transactions, 2,000 shares from Sherwin, 2,000 shares from Wien & Co., and 19,400 shares from Sherman Fitzpatrick, at $0.50 per share. The latter three entities were market-makers in Merlin Baines common.

On January 8, 1990, Alex Brown notified First Interregional that OTRA had issued an intent to "buy-in" the shares sold by First Interregional on December 21. OTRA was allegedly acting as an agent for the purchaser of the stock and issued the notice because First Interregional could not deliver unrestricted shares without original copies of the legal opinion letters.

Upon learning this, Doherty immediately telephoned Lombardi, Schwartz, and Lipow and told them that the opinion letters were needed to avoid the buy-in. Cahill and Lipow apparently assured Doherty that First Interregional would receive the letters before the buy-in was executed. This apparently never happened, and Alex Brown notified First Interregional that OTRA bought-in 700,000 shares of Merlin Baines at $0.50 per share. First Interregional paid Alex Brown $350,000 to satisfy the buy-in. The buy-in was executed against an account at Castleton–Rhodes listed under the name of OVSK Ltd.

First Interregional alleges that the proceeds from the buy-in were wired to a number of accounts. First, on January 17, 1990, $245,000 was wired from OTRA to Gateway Bank to be held in trust for Haughton, with instructions to "please notify Raymond T. Bogert V.P." On January 18, $15,170 of this amount was wired from Haughton's account at Gateway back to

OTRA and then to the Rio Management Pension Fund, with the instructions "Ovsk by letter instruction and by Raymond T. Bogert." Second, $5,000 was retained by OTRA. Third, $100,000 was wired from OTRA to Bankers NYC and then to Banco Central of New York for further credit to a Castleton–Rhodes account.

On January 24 and 29, 1990, Cahill allegedly presented checks to First Interregional to pay for the Merlin Baines stock he purchased on January 4. The checks were signed by him and drawn on a Stonehill Publishing account at Gateway Bank, an account which First Interregional claims was controlled by Haughton and Cahill. The checks were returned to First Interregional with the notation "account closed." Cahill also presented First Interregional with a check drawn on a Euroleisure Corporation account at Gateway Bank that too was returned with the notation "account closed."

*Discussion*

### The 12(b)(6) Standard

Dismissal of a complaint under the Federal Rule of Civil Procedure 12(b) is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts supporting its claim which would entitle it to relief. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). A court must construe the complaint's allegations in the light most favorable to the plaintiff and accept those allegations as true. *Dacey v. New York County Lawyers' Assoc.*, 423 F.2d 188, 191 (2d Cir.1969), *cert. denied*, 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970). Although argumentative inferences favoring the party asserting jurisdiction should not be drawn, the court must accept as true all material factual allegations in the complaint. *Atlantic Mut. Ins. Co. v. Balfour*

*Maclaine Int'l, Ltd.*, 968 F.2d 196 (2d Cir. 1992).

### Subject–Matter Jurisdiction

First Interregional asserts only two non-federal common law claims against Gateway in the Third Amended Complaint: that Gateway was negligent in hiring Bogert (Count VI), and that Gateway is liable under the doctrine of *respondeat superior* (Count VII). These claims can only be considered by a federal court independent of any federal claim if the court chooses to exercise its discretion to include Gateway.

In 1990 Congress enacted 28 U.S.C. § 1367, Supplemental Jurisdiction, to apply to any claims filed after December 1, 1990.[2] Section 1367 provides that, with certain statutory exceptions,

> (a) [T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.... Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties....
>
> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—....
>
>> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The statute "was intended to codify and to expand juridically-developed concepts of pendent and ancillary jurisdiction," and allows the district court to "exercise considerable discretion over what state claims it will include within its supplemental jurisdiction in a particular case," *Cushing v. Moore*, 970 F.2d 1103, 1110 (2d Cir.1992). The statute incorporates existing constitutional analyses of pendent jurisdiction, including the definition originally taken from *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The Supreme Court in *Gibbs* held that if the state and federal claims derived "from a common nucleus of operative fact," and if "a plaintiff's claims are such that he would

---

**2.** First Integrated filed its claim December 28, 1990.

ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole," *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138.

■ But power to hear a case does not automatically ensure that the court should hear it. Although a federal court's exercise of pendent jurisdiction over the plaintiff's state claims is now a favored and normal course of action, it is not automatic. *Promisel v. First American Artificial Flowers, Inc.,* 943 F.2d 251, 254 (2d Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992). Additional parties should not be haled into court unless their presence necessarily will promote judicial economy, convenience, and fairness to the litigants. *U.S. v. A & N Cleaners & Launderers, Inc.,* 747 F.Supp. 1014, 1017 (S.D.N.Y.1990). Here, to the extent that the state claims do derive from a common nucleus of fact, it will be fair and convenient to all parties to include Gateway. To the extent the claims against Bogert are not logically dependent upon the same facts as the claims against the other defendants, the claims should be examined to see whether they pose a question of law which will on its own survive a dismissal under Rule 12(b).

The Common Law Claims

■ First Interregional asserts common law claims sounding in agency against Gateway: the negligent hiring and supervising of Bogert and *respondeat superior* liability for actions taken by Bogert.

■ The claim that Gateway was negligent in hiring Bogert does not derive from a common nucleus of facts pertaining to the underlying action. An employer must make reasonable inquiry into the qualifications of its potential employees and must take proper safeguards to ensure the employee performs his job without harming others. *Weiss v. Furniture in Raw,* 62 Misc.2d 283, 306 N.Y.S.2d 253 (1969). The only evidence of Bogert's untrustworthiness offered by First Interregional, however, is that Bogert was named as a defendant in several lawsuits after he joined Gateway. According to Gateway, Bogert was hired in 1986; the docket numbers of the cases cited by First Interregional range from 1986 up to 1989 (Third Amended Complaint ¶ 65(d)). It is hard to see how there can be a factual overlap between the hiring of Bogert in June, 1986, and the events of December 1989 and January 1990. In fact, in this pleading, First Interregional has alleged no facts which would put Gateway on any kind of notice whatsoever when it hired Bogert.

■ The claim that Gateway is responsible under a theory of *respondeat superior* does derive from a common nucleus of facts, however. Gateway is correct in arguing that if Bogert was acting beyond the scope of his authority Gateway will not be liable; however, the extent to which Bogert was acting within the scope of his employment at the time will require examination of the factual happenings at Gateway at the time that Cahill allegedly set up the dummy account, wrote the checks, and transferred the proceeds of the buy-in. If First Interregional intends to allege an elaborate, minutely-planned scheme as seems likely ("the complex scheme involved would only work if a precise sequence of events took place," *Plaintiff's Memorandum of Law* at 1), then the facts of Bogert's involvement—including his position, authority, and contact with his superiors and other Gateway employees at the time— will have to be alleged in full in both the federal and the state claim. Since it will clearly be in the interests of judicial economy to have the scheme alleged and proved only once, First Interregional's claim of negligent supervision should not be dismissed under the *Gibbs* test.

■ The other issue of nonfederal law is whether Gateway is liable for Bogert's actions as its agent. Section 261 of the Restatement (Second) of Agency (1957) states that:

> A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third

persons is subject to liability to such third persons for the fraud.

Comment a explains this rationale:

The principal is subject to liability under the rule stated in this Section although he is entirely innocent, has received no benefit from the transaction, and ... although the agent acted solely for his own purposes. Liability is based upon the fact that the agent's position facilitates the consummation of the fraud.

The reasoning behind this logic (that between two innocent parties, the one who has allowed the fraud to be perpetrated should bear the loss) has been accepted by New York courts on several occasions. *Hatton v. Quad Realty Corp.*, 100 A.D.2d 609, 473 N.Y.S.2d 827, 829 (2d Dept.1984) (citations omitted). Bogert, as vice president of Gateway, was in such a position, and under these circumstances the court must decide whether First Interregional has a colorable claim that Bogert had apparent authority from Gateway to do as he did.

Two factors are especially important here in determining whether Bogert acted with apparent authority. The first is the extent of Bogert's actual authority, and the second is the degree to which Bogert's actions should have been foreseen by Gateway.

The greater the authority within the company, the greater the damage that can be done by the abuse of that authority. The Second Circuit has held that a firm is more appropriately liable for the tortious behavior of a vice president than for a routine employee. *Cf. S.E.C. v. Management Dyn. Inc.*, 515 F.2d 801, 813 (2d Cir.1975); *S.E.C. v. Geon Indus. Inc.*, 531 F.2d 39, 54–55 (2d Cir.1976). The degree of responsibility placed upon the employee in determining the liability of the master is a factor in New York state law as well. *Carroll v. Station Managers, Inc.*, 104 Misc.2d 1014, 429 N.Y.S.2d 825, 827 (N.Y.Civ.Ct.1980).

But New York has added another gloss to the law of *respondeat superior*—the foreseeability of the agent's tortious conduct. "Although it has long been held that a principal is relieved of liability where his agent is acting for the agent's own purposes ... the Court of Appeals has held that the principal will be liable where the general type of conduct may have been reasonably expected." *Hatton*, 473 N.Y.S.2d at 829.

First Interregional has alleged a triable issue of fact over whether Gateway should have foreseen the need for closer supervision of Bogert's accounts. While the lawsuits alleged by First Interregional could not have put Gateway on notice when Bogert was hired, they perhaps should have put Gateway on notice that Bogert might be named as a defendant in his capacity as a vice president of Gateway. It is true that the nature of the other lawsuits may not have alerted Gateway to concern over any particular type of conduct, but whether Gateway should have increased its supervision of Bogert in some fashion is at least a triable issue.

The only problem with imputing liability for Bogert's apparent authority is that, since First Interregional did not even know about Bogert or the Gateway accounts until after the fraud, Gateway claims that First Interregional was not in privity with it and could not have relied upon Bogert's apparent authority. However, the precise factual nature of the fraud has not been established. On a motion to dismiss, the Court must draw all reasonable inferences in favor of the non-moving party. *Cosmas v. Hassett*, 886 F.2d 8, 12 (2d Cir.1989). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Gateway has not met its heavy burden of showing that First Integrated can prove no set of facts in support of its claim which would entitle it to relief.

*Conclusion*

For the reasons given above, Gateway's motion to dismiss the claims stated against it in First Interregional's Third Amended Complaint is denied.

It is so ordered.