UNITED STATES of America, Plaintiff,

v.

A & N CLEANERS AND LAUNDERERS, INC., Ben Forcucci, Marine Midland Bank, N.A., Jordan W. Berkman, John A. Petrillo, Joseph Curto and Mario Curto, Defendants.

MARINE MIDLAND BANK, N.A.,
Third–Party Plaintiff,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, St. Paul Mercury Insurance Company, Utica Mutual Insurance Company, The North River Insurance Company and United States Fire Insurance Company, Third–Party Defendants.

MARINE MIDLAND BANK, N.A.,
Third–Party Plaintiff,

v.

VILLAGE OF BREWSTER,
Third–Party Defendant.

No. 89 Civ. 6865 (RWS).

United States District Court,
S.D. New York.

Jan. 25, 1994.

Mary Jo White, U.S. Atty. for the S.D.N.Y., for U.S. by Sara L. Shudofsky, Asst. U.S. Atty.

Edwards & Angell, New York City, for defendants Jordan W. Berkman, John A. Petrillo, Joseph Curto and Mario Curto by Lynn Wright, Susan S. Egan, Christopher Heyer.

Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, for Defendant Marine Midland Bank by Robert E. Gainville.

## OPINION

SWEET, District Judge.

Plaintiff United States of America (the "Government") has moved for partial summary judgment against defendants Jordan W. Berkman ("Berkman"), John A. Petrillo ("Petrillo"), and Joseph and Mario Curto (the "Curtos") (collectively, the "Berkman Defendants"), pursuant to Rule 56, Fed.R.Civ.P., on the ground that the defendants are jointly and severally liable under 42 U.S.C. § 9607(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), 42 U.S.C. §§ 9601–9675, for costs incurred and to be incurred by the Government in response to the release or threatened release of hazardous substances at the Brewster Wellfield Site (the "Site") in Putnam County, New York. For the following reasons, the Government's motion for partial summary judgment is denied.

### The Parties

The parties, prior proceedings, and background of this action were described more fully in prior opinions of this Court, reported at 747 F.Supp. 1014 (S.D.N.Y.1990) and 788 F.Supp. 1317 (S.D.N.Y.1992), familiarity with which is assumed. Defendant Berkman is an attorney admitted to practice in New York State who specializes in real estate law. Petrillo was a builder engaged in the construction business. The Curtos are retired individuals. The Berkman Defendants presently hold title as one-third tenants in common to a piece of real property and the improvements thereon, consisting of a single one-story building (the "Building") and a parking lot, located at the intersection of Routes 6 and 22 in the Town of Southeast, in Putnam County, New York (the "Property").

Defendant Ben Forcucci ("Forcucci") is the sole shareholder, officer and director of A & N Cleaners and Launderers, Inc., a/k/a Alben Cleaners & Launderers ("A & N"). He alone was responsible for the day-to-day operation of the dry cleaning machines and the disposal of waste. Defendant Marine Midland Bank, N.A. ("Marine") was the lessor of the Property from 1970 through 1990. From 1970 to the present, Marine has maintained a branch bank at the Property. Since 1990, Marine's lease at the Property relates only to that part occupied by its branch office.

### Prior Proceedings

The Government filed its complaint on October 16, 1989 (the "Complaint"). On September 20, 1990, the Court denied a motion by third-party defendant Utica Mutual Insurance Company to dismiss a third-party claim brought against them by Marine. *See* 747 F.Supp. 1014 (S.D.N.Y.1990). On June 5, 1991, this Court ordered that the case be bifurcated for the litigation of liability and damages. On April 3, 1992 (the "April 3 Opinion"), this Court granted the Government's motion for summary judgment as to the CERCLA liability of the Berkman Defendants, but held that triable issues of fact remained as to two affirmative defenses pled by the Berkman Defendants: the third-party affirmative defense and the innocent landowner affirmative defense. *See United States v. A & N Cleaners & Launderers, Inc.*, 788 F.Supp. 1317 (S.D.N.Y.1992).

Argument was heard on the present motions on October 13, 1993. On November 15, 1993, the Berkman Defendants, through their attorneys, supplied the Court with a supplemental statement of material facts pursuant to Rule 3(g) of the Civil Rules for the Federal Courts of the Southern and Eastern Districts of New York. On December 9, 1993, the Government wrote to the Court to respond to the Berkman Defendants' November 15 letter and to provide further support for the present motion. On December 14, 1993, Marine, through its attorneys, wrote to the Court to respond to the Government's letter of December 9, 1993. The Government responded to this letter by letter to the Court on January 18, 1994. This motion was considered fully submitted as of January 18, 1994.

### Background

This action arises out of the Government's investigation of and remedial actions relating to contamination at the Site. The Government has alleged that releases of hazardous substances at the Property caused it to incur response costs for which the defendants are liable.

The Property consists of a one-story brick building akin to a shopping mall, which is surrounded by a parking lot and adjacent grassy area on a total of approximately 1.8 acres. The Building occupies 12,500 square feet and is currently occupied by a Marine branch office, A & N, and a limousine service company. Significant to this action, a floor drain (the "Drain") traverses the entire length of the interior of the Building and allegedly empties into a dry well (the "Dry Well") under the parking lot in the rear of the Property near the septic tank.

Until 1979, title to the Property was held by Six & Twenty–Two Real Estate Company ("Six & Twenty–Two"). Effective October 1, 1970, Marine leased the entire Property from Six & Twenty–Two for a term of ten years, with a renewal option for two successive five year terms (the "Marine Lease"). Both renewal options were exercised, giving Marine a continuous leasehold over the Property from 1970 through 1990. Marine currently holds a two-year lease for only that portion of the Property occupied by its branch office.

The Marine Lease was subject and subordinate to prior leases to portions of the Property. Six & Twenty–Two assigned to Marine all of its right, title and interest in each of those leases and authorized Marine to collect rents and enforce all of the obligations of the tenants under them. One of the leases was held by Pircio's Aristocratic Cleaners Corp. ("Pircio's") and was to run until November 30, 1972 (the "Pircio's Lease"). The Pircio's Lease provided that the premises were to be used and occupied as a dry cleaning establishment and that responsibility for the care and maintenance of the Dry Well belonged to Pircio's.

On October 5, 1970, Marine notified Pircio's to make all rent payments to Marine "as your new landlord." Shortly thereafter, Marine was notified that A & N had succeeded to Pircio's rights under the Pircio's Lease. Like Pircio's, A & N occupied the premises as a dry cleaning business. In 1971, the Pircio's Lease was extended through October 31, 1977, and A & N was given the option to renew for one three-year term and one two-year term. In 1982, A & N entered into a sublease with Marine, running through 1985. The 1982 Sublease specifically provided that the premises would be used and occupied for a dry cleaning, rug cleaning and laundry establishment. Marine extended the lease term on August 12, 1985, subject to cancellation by either party on 90–days notice.

Meanwhile, the Berkman Group had purchased the Property from Six & Twenty–Two on March 2, 1979, taking title to the Property subject to the Marine Lease.

### A & N's Disposal of Hazardous Waste on the Property

Forcucci personally operated A & N and was responsible for the day-to-day operation of the dry cleaning machines and of the disposal of waste. In the dry cleaning process, clothes are cleansed in a washer by agitation with a solvent, in this case, perchlo-

roethlene ("PCE"). After washing, the clothes are transferred to dryers to remove as much solvent as possible. During the drying phase, the condensed PCE is recovered and collected in a bucket in front of each dryer for re-use; water containing PCE from the water separator of the dryer is collected in a bucket at the back of the dryer.

Forcucci admittedly disposed of the PCE-infused waste water through the Drain. The date after which he ceased this practice and began storing waste water in 55–gallon containers is in dispute; the defendants claim that 1978 is the operative date, while the Government contends that the disposal of hazardous substances continued through 1991.

The United States claims to have incurred approximately $3 million in response costs in connection with contamination resulting, in part, from A & N's disposal of hazardous wastes at the Property. However, in light of the bifurcation, the cost of the Government's response is not in issue at this time.

### Statutory Framework

Congress enacted CERCLA in 1980 in response to the severe environmental and public health effects posed by the disposal of hazardous wastes. *See United States v. A & N Cleaners*, 788 F.Supp. 1317, 1322 (S.D.N.Y.1992). Through the passage of CERCLA, Congress intended that the federal government be given the tools necessary for a prompt and effective response to the problems resulting from hazardous waste disposal, and that those responsible for these problems bear the costs for remedying the harmful conditions they created. *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir.1986).

■ Under CERCLA, the Government may take response action whenever there is a release or threatened release of "hazardous substances," and then sue certain persons for reimbursement of the cleanup costs. 42 U.S.C. § 9604. To establish liability, the Government must demonstrate that (1) there has been a "release" or a "substantial threat of release" [1] of a "hazardous substance" [2]; (2) from a "facility"; [3] (3) which caused the Government to incur response costs; and (4) each of the defendants fits within one of the categories of responsible parties identified under 42 U.S.C. § 9607(a) of CERCLA. 42 U.S.C. § 9607(a); *A & N Cleaners*, 788 F.Supp. at 1322.

Among the four classes of potentially liable defendants under 42 U.S.C. § 9607(a) are the current "owner and operator" of the facility, 42 U.S.C. § 9607(a)(1), and any person who at the time of disposal of any hazardous substance "owned or operated" any facility at which such hazardous substances were dis-

---

1. A "release" is "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant).... 42 U.S.C. § 9601(22).

2. A "hazardous substance" is (A) Any substance designated pursuant to section 311 of the Federal Water Pollution Control Act, (B) any element, compound, mixture, solution, or substance designated pursuant to [section 9602 of CERCLA], (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act (but not including any waste the regulation of which under the Solid Waste Disposal Act has been suspended by Act of Congress), (D) any toxic pollutant listed under section 307(a) of the Federal Water Pollution Control Act, (E) any hazardous

air pollutant listed under section 112 of the Clean Air Act, and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 2606 of the Toxic Substances Control Act. The term does not included petroleum, including crude oil or any fraction thereof. 42 U.S.C. § 9601(14).

3. A "facility" is defined as (A) any building, structure, installation, equipment, pipe or pipeline (*including any pipe into a sewer or publicly owned treatment works*), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; *but does not include any consumer product in consumer use or any vessel.* 42 U.S.C. § 9601(9).

posed, *id.* § 9607(a)(2). These so-called "covered parties" are liable for "all costs of removal or remedial action incurred by the United States or a State not inconsistent with the national contingency plan," if "there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance" from the facility. *Id.* § 9607(a)(4).

■ Absent a showing by a preponderance of the evidence that one of the affirmative defenses contained in 42 U.S.C. § 9607(b), has been satisfied, the liability of covered parties for costs incurred in the clean-up is strict. *B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192 (2d Cir.1992); *New York v. Shore Realty Corp.*, 759 F.2d 1032 (2d Cir.1985). Where the environmental harm is indivisible, liability is also joint and several. *B.F. Goodrich*, 958 F.2d at 1197.

Of the defenses available to a defendant otherwise liable under 42 U.S.C. § 9607(a), two are relevant here. First, under the "third party defense" set forth in section 9607(b)(3), a defendant is not liable if it establishes by a preponderance of the evidence that the release or threatened release was caused by third parties other than those with whom it has a direct or indirect contractual relationship, assuming that the defendant has also exercised due care under the circumstances and has taken precautions against foreseeable acts or omissions by the third parties. 42 U.S.C. § 9601(35) defines a "contractual relationship" to include "land contracts, deeds or other instruments transferring title or possession."

The second defense relevant in this case is the "innocent purchaser" or "innocent landowner" defense. In 1986 Congress created an exception to the "no contractual relationship" requirement of the third-party defense, thereby making the third-party defense available to some owners who acquired the relevant property after the disposal or placement of hazardous substances occurred. *See* CERCLA § 9601(35)(A). To plead this defense successfully, property owners must show, by a preponderance of the evidence,

that the disposal of the hazardous substances occurred before they purchased the property, and that at the time of acquisition they "did not know and had no reason to know" that the substances had been disposed at the facility. 42 U.S.C. § 9601(35).

To qualify as an "innocent purchaser," one must have undertaken "all appropriate inquiry" into the previous ownership and uses of the property, consistent with "good commercial or customary practice" at the time of transfer. 42 U.S.C. § 9601(35)(B). "Good commercial practice" is not defined in the statute. The legislative history of this section is also vague on the definition of "good commercial practice," indicating only that it requires that "a reasonable inquiry must have been made in all circumstances, in light of best business and land transfer principles." H.R.Conf.Rep. No. 99–962, 99th Cong., 2d Sess., at 187, U.S.Code Cong. & Admin.News 1986, pp. 2835, 3280 (1986). In deciding whether a defendant has complied with this standard, courts consider any specialized knowledge or expertise the defendant has, whether the purchase price indicated awareness of the presence of a risk of contamination, commonly known or reasonable information about the property, the obviousness of the presence of contamination at the property, and the ability to detect such contamination by appropriate inspection. 42 U.S.C. § 9601(35)(B).

### Discussion

Summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "[A]ll ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir.1991) (citations omitted). The court will find that there is no genuine issue of material fact and may therefore grant summary judgment where, "[v]iewing

the evidence produced in the light most favorable to the nonmovant, ... a rational trier could not find for the nonmovant." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991); see also *Bay*, 936 F.2d at 116. Summary judgment may be an appropriate mechanism for resolving liability issues under CERCLA. *See, e.g., New York v. Shore Realty Corp.*, 759 F.2d 1032, 1042 (2d Cir. 1985); *United States v. Hooker Chems. & Plastics Corp.*, 680 F.Supp. 546, 551 (W.D.N.Y.1988).

■ The Government asserts that the Berkman Defendants are liable under 42 U.S.C. § 9607(a)(1) and (2) as the current and past owners of the Property. In opposition, the Berkman Defendants counter that they are relieved of liability under the third party defense because they did not have a contractual relationship with A & N and/or Forcucci during the period of time that any releases occurred. Furthermore, they claim that they meet the requirements of the innocent landowner defense.

In denying the Government's motion for summary judgment, the April 3 Opinion held that no contractual relationship existed between Marine's sublessees A & N or Forcucci and the Berkman Defendants. *See A & N Cleaners*, 788 F.Supp. at 1326–29. In addition, the April 3 Opinion held that triable issues of material fact remained as to when A & N Cleaners ceased its disposal activities at the Property. *Id.* at 1329–30.

The Government argues that "key facts" have emerged which resolve these issues and make the Berkman Defendants' assertion of the third-party and innocent purchaser defenses ripe for summary judgment. The first "key fact" is that the Government has now submitted evidence that A & N Cleaners leased its premises directly from the Berkman Defendants since October 1, 1990.

The second "key fact" is that, in a February 4, 1993 response to question 10 of the Government's third set of interrogatories ("Answer 10"), Benjamin Forcucci and A & N conceded that they had disposed of ironing

machine condensate at the Property until 1991. Since the Berkman Defendants, who purchased the Property in 1979, cannot invoke the innocent purchaser defense unless they establish that they acquired the property after the disposal of hazardous substances, the Government claims that Answer 10 entitles them to summary judgment on this issue.

The April 3 Opinion held that a triable issue of fact existed as to the date after which A & N ceased disposing of contaminated wastes down the Drain. The Court reached this conclusion because Forcucci had given conflicting accounts in both sworn and unsworn accounts regarding the date that A & N had ceased such disposal.

Mr. Forcucci's sworn testimony consisted of the following. First, in his deposition in this action dated December 5, 1990, Mr. Forcucci was asked what he did with the water that collected in the water separator at the rear end of his dryer, to which Mr. Forcucci responded that he ceased disposing of that water in 1978.

Second, EPA's November 17, 1989 Supplemental Request for Information under 42 U.S.C. § 9604(e) posed the following question to Forcucci:

> Were dry cleaning wastes or any other substances ever disposed of or discharged by Alben Cleaners or any of its employees or agents into the drywell located adjacent to the premises currently occupied by Alben Cleaners? If so, describe in detail (i) the nature and quantities of such wastes or other substances, (ii) the dates of such disposal or discharge, (iii) the location of the disposal or discharge (e.g., into a drain or pipe), and (iv) the names of the persons who performed such disposal or discharge.

Forcucci responded: "Yes. Water from separator of dryer. 1965–1983. Drain in hallway at rear of store. Ben Forcucci."

In addition to this testimony given under oath, the April 3 Opinion noted that Forcucci had informed the Fire Safety Officer at Marine that he had disposed of hazardous

wastes down the drain "prior to 1983." *A & N Cleaners,* 788 F.Supp. at 1330. This conflicting testimony raised a triable issue of fact regarding the date after which A & N ceased their disposal of contaminated wastes.

The Government now claims to have resolved this issue through the submission of a response to their third set of interrogatories, dated February 4, 1993.

Question 10 of the Government's third set of interrogatories asked:

> From the period 1965 to the present, provide the following information pertaining to waste materials generated from the ironing or pressing machines used on the 6 & 22 property:
>
> \*   \*   \*   \*   \*   \*
>
> (c) indicate the *method* of disposal of any containerized condensate. . . .

Forcucci responded that "1965 through sometime in 1991 water was put down drain. Sometime in 1991 through 1992 water was saved after drain capped as per E.P.A. instructions and waste hauler removed."

This response, which appears to directly contradict Forcucci's response to the Government's information request under 42 U.S.C. § 9604(e), does not eliminate the triable issue of material fact identified in the April 3 Opinion. Summary judgment is inappropriate where a material issue of fact turns on the credibility of a witness. *Poller v. Columbia Broadcasting Sys., Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Samuel v. Merrill Lynch Pierce Fenner & Smith,* 771 F.Supp. 47, 50 (S.D.N.Y.1991). Conflicting testimony casts doubt on a witness' credibility. *Kenbrooke Fabrics, Inc. v. Holland Fabrics, Inc.,* 602 F.Supp. 151, 154 (S.D.N.Y.1984).

The Government attempts to resolve the apparent contradiction between Answer 10 and Forcucci's response to their 9604(e) inquiry by asserting that, in the Section 9604(e) inquiry, Mr. Forcucci was not asked specifically what his disposal practices were with respect to ironing machine condensate generated in his dry cleaning operations. This "critical distinction" between the general question asked in the 9604(e) inquiry and the "specific question" posed in the interrogatory, the Government claims, eliminates any conflict between the two.

However, the Government fails to explain why, when questioned on the methods of disposal of "dry cleaning wastes or any other substances ever disposed of or discharged by Alben Cleaners or any of its employees or agents into the drywell," Forcucci's answer should have differed by eight years from that given when Forcucci was asked about one of the individual wastes disposed of by his facility.

■ In addition to the continuing inconsistencies in the accounts by Mr. Forcucci regarding when he ceased disposing of hazardous substances on the Property noted above, the Berkman Defendants have submitted the affidavit of Jordan W. Berkman, in which he claims that Mr. Forcucci advised his partner that A & N had not disposed of contaminated waste in the drywell on the Property since 1978. In short, the Government has failed to eliminate the question of fact regarding the date that Forcucci ceased disposal of hazardous substances on the Property. As in the April 3 Opinion, this fact precludes the granting of summary judgment on the issue of the innocent purchaser defense.

■ Additionally, the questions of fact regarding when A & N ceased disposal of hazardous substances on the Property precludes summary judgment on questions relating to the Berkman Defendants' third-party defense. The Government claims that, beginning on October 1, 1990, A & N was the Berkman Defendants' lessee, rather than Marine's sublessee. They claim that this establishes that the Berkman Defendants were in a contractual relationship with A & N, which was one of the issues that precluded summary judgment on these issues in the April 3 Opinion.

Since it remains unclear when A & N ceased disposal of hazardous substances on

the Property, however, even if the Court were to determine that a contractual relationship existed between the Berkman Defendants and A & N after October 1, 1990, triable questions would remain regarding whether any disposal of hazardous wastes occurred during this period. The third-party defense is unavailable if a release or threat of a release of a hazardous substance was caused by "an act or omission of a third party ... whose act or omission occurs in connection with a contractual relationship, *existing* directly or indirectly, with the defendant." 42 U.S.C. § 9607(b)(3) (emphasis added). Even if the Berkman Defendants were in a contractual relationship with A & N subsequent to October 1, 1990, the Berkman Defendants may still assert the third-party defense if A & N ceased all disposal of hazardous wastes prior to that date, as several of Forcucci's responses indicate. *Cf. United States v. National Bank,* 1990 WL 357792, at *4, 1990 U.S.Dist. LEXIS 18925, at *12 (W.D.Pa. April 23, 1990) (lessor must show that lessee did not dispose of wastes during its tenancy to be eligible for third-party defense under CERCLA). Since there remains a triable question of fact regarding whether the Berkman Defendants had a contractual relationship with A & N during the time that disposal took place at the Property, summary judgment on this issue is denied.

### Conclusion

For the reasons discussed above, the Government's motion for summary judgment is denied. At the oral argument on this motion, the Court proposed that a hearing be held on the issue of the Berkman Defendants' third-party and innocent landowner defenses, as well as on the issue of when Forcucci ceased disposal of hazardous substances on the Property. All parties have expressed by letter to the Court their views on the advisability of holding such a hearing. Since it appears that such a hearing would efficiently conserve the resources of the parties and the Court, a hearing will be held on these issues on April 1, 1994.

It is so ordered.