949 F.2d 42
 Fed. Sec. L. Rep. P 96,406, 21 Fed.R.Serv.3d 75
 CORTEC INDUSTRIES, INC. and Cortec Holdings, Inc.,
Plaintiffs-Appellants,
v.
SUM HOLDING L.P., Dubin Clark & Company, Inc., Dubin Clark
Capital Corp., Ronald N. Dubin, J. Thomas Clark, Jean Pierre
Dammann, Norman J. Yerke, Michael Canipe, Woodlawn
Foundation, Westinghouse Credit Corporation, Bowles
Hollowell Conner & Co., Ernst & Young, Defendants,
Westinghouse Credit Corporation, Defendant-Appellee.
 No. 1456, Docket 91-7099.
 United States Court of Appeals,
Second Circuit.
 Argued May 13, 1991.
Decided Nov. 8, 1991.
 
 Michael H. Barr, New York City (Mark S. Pomerantz, Sonnenschein Nath & Rosenthal, of counsel), for plaintiffs-appellants.
 Christopher P. Hall, New York City (Jane A. Rue, Jones, Day, Reavis & Pogue, of counsel), for defendant-appellee.
 Before CARDAMONE, WALKER and FRIEDMAN,* Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 This appeal from a dismissal made pursuant to Fed.R.Civ.P. 12(b)(6) in a securities fraud action asks what documents a district court judge may consider when disposing of a motion to dismiss a complaint for failure to state a claim. Here in drafting their complaint plaintiffs relied upon documents transmitted to them by defendants, though they neglected to attach these papers to, or incorporate them by reference in, the complaint. When defendants made a Rule 12(b)(6) motion to dismiss utilizing the same documents, plaintiffs insisted the district court not consider them, but instead was required to limit its inquiry regarding the complaint's viability to its four corners. Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim--and that they apparently most wanted to avoid--may not serve as a means of forestalling the district court's decision on the motion.
 
 
 2
 Plaintiffs sought damages and rescission of a stock purchase agreement allegedly entered into in violation of the securities laws, civil RICO, and the common law. The United States District Court for the Southern District of New York (Haight, J.) in an opinion and order dated January 3, 1991 dismissed, without leave to replead, plaintiffs' claim that Westinghouse Credit Corporation (Westinghouse) violated § 12(2) of the Securities Act of 1933 in connection with the sale of Cortec Industries, Inc., finding that the complaint itself demonstrated that Westinghouse was not a statutory seller as that term is defined in § 12(2) of the Securities Act of 1933, 15 U.S.C. § 771(2).
 
 BACKGROUND
 
 3
 Cortec is engaged in the business of manufacturing pre-engineered metal buildings, and consists of three divisions: Rib-Roof Industries, Summit Buildings, and Inland Buildings. On May 12, 1989 plaintiffs purchased all of Cortec's stock and its outstanding debt for $53 million. Plaintiffs are "new" Cortec Industries, Inc. and Cortec Holdings, Inc. (Cortec or plaintiffs). Prior to this transaction "old" Cortec, for purposes of clarification, was held by four different categories of owners: defendants affiliated with Dubin Clark & Company, Inc. that had formed old Cortec, defendants that were current members of old Cortec's management, and the defendant Woodlawn Foundation, a not-for-profit corporation. These defendants together owned 1,000 shares of old Cortec stock. The fourth entity with an ownership interest was defendant Westinghouse, holder of a warrant to purchase 111 shares of old Cortec stock for $111. Westinghouse had received the warrant in connection with its financing of old Cortec's earlier purchase of one of its divisions.
 
 
 4
 Sometime prior to December 13, 1988 the Dubin Clark and management defendants decided to sell old Cortec and retained the investment banking firm of Bowles Hollowell, Conner & Co. (Bowles) located in Charlotte, North Carolina to assist them in that objective. After Leach McMicking & Co., the parent corporation for the purchasing corporations, received an offering memorandum prepared by Bowles dated December 13, 1988, it became interested in acquiring old Cortec. The offering memorandum contained a broad range of information concerning old Cortec, such as its operation in the industry as a whole, including detailed descriptions and historical analyses of its financial performance, what segment and position it occupied in the industry, and its projected financial results for 1988, 1989 and subsequent years. The memorandum also contained a series of related representations concerning the growth of old Cortec's business and its prospects, which was used to bolster the various optimistic financial projections.
 
 
 5
 The offering memorandum led Leach McMicking to pursue the acquisition. Its first offer of $21 million plus repayment of existing debt of nearly $26 million was rejected. After further negotiations and representations from the owners and managers of old Cortec--referred to in plaintiffs' complaint as the "selling defendants," Leach McMicking submitted a revised offer of $22.5 million together with repayment of debt, which the selling defendants accepted.
 
 
 6
 The transaction was structured as follows. First, Leach McMicking created three new corporations: plaintiff Cortec Holdings, Inc. (Holdings), a Delaware corporation with its principal office in San Francisco, California; plaintiff Cortec Industries, Inc. (Cortec), a Delaware corporation with its principal office in Milwaukee, Wisconsin and a wholly-owned subsidiary of Holdings; and Cortec Acquisitions, Inc. (Acquisition) another wholly-owned subsidiary of Holdings formed for the purpose of engaging in the transaction at issue in this suit. Second, on April 11, 1989, Acquisition entered into a Stock Purchase Agreement with the selling defendants, Westinghouse and Woodlawn, pursuant to which Acquisition agreed to purchase all the shares of old Cortec and old Cortec agreed to use some of the money paid by Acquisition to purchase and cancel the Westinghouse warrant.
 
 
 7
 The Stock Purchase Agreement contained certain representations and warranties, as well as certain conditions precedent to plaintiffs' obligations to purchase old Cortec. The representations and warranties were that the sellers had furnished audited financial statements for 1986, 1987 and 1988 prepared in accordance with generally accepted accounting principles and on which the accounting firm of Ernst & Young, also a defendant in this litigation, had expressed an unqualified opinion to the effect that since January 1, 1989 there had not been any material adverse changes in the business or financial condition of old Cortec, Cortec's personal property was not encumbered except as specified, and the information concerning old Cortec set forth in the Stock Purchase Agreement and other documents furnished or to be furnished by the sellers contained no untrue statements of material facts and did not omit material facts. The conditions precedent included the correctness of any representations and warranties when made and as of the date of closing, and that Ernst & Young would deliver a "comfort letter" to Acquisition concerning 1989's first quarter financial data.
 
 
 8
 The comfort letter was sent, no clarifications or alterations of prior representations were made, and the transaction closed on May 12, 1989. And then the third and final step of the transaction occurred: Holdings, through Acquisition, acquired all of old Cortec's shares, and old Cortec purchased and cancelled Westinghouse's warrant. Acquisition was then merged into old Cortec, and "new" Cortec emerged as the surviving corporate entity.
 
 
 9
 In their complaint, plaintiffs allege they would not have entered into this transaction "if not for defendants' repeated fraudulent or negligent misrepresentations and omissions concerning old Cortec's financial condition, operations and prospects." The particular misrepresentations fall roughly into three categories: failure to state the true nature of the uncollectability of accounts receivable or to provide for adequate loss reserves; failure to base income projections and financial statements on reasonable assumptions or historical analysis; and a miscellaneous list of items that were not disclosed and which negatively affected old Cortec's actual net worth and future financial stability.
 
 
 10
 On the basis of these allegations, plaintiffs asserted claims against the following defendants: the selling defendants, Ernst & Young and Bowles for violations of § 10(b) of the 1934 Securities Act; all defendants, except Ernst & Young, for violation of § 12(2) of the 1933 Securities Act; all defendants for violation of § 17(a) of the 1933 Act; the selling defendants under civil RICO and for common law fraud; Sum Holding--a Dubin Clark-controlled company that owned 750 shares of old Cortec prior to the transaction--and former old Cortec president Norman Yerke for breach of contract; and Ernst & Young for negligence.
 
 
 11
 All the defendants moved under Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim. The district court's January 3, 1991 opinion consisted of several parts, only one of which is the subject of this appeal, that is, the part that granted dismissal without leave to replead plaintiffs' claim against Westinghouse under § 12(2). Based solely on its perusal of the complaint the district court expressed its view of plaintiffs' claim as follows:
 
 
 12
 At the time of the transaction, [Westinghouse] owned a warrant which if exercised entitled [Westinghouse], on conversion, to 111 Cortec shares. The warrant had not been exercised. [Westinghouse] held no Cortec shares. In order to consummate plaintiff's [sic] purchase of Cortec, it was necessary to do something about the [Westinghouse] warrant. The parties to the transaction took care of the matter by having the warrant's issuer, "old" Cortec, request [Westinghouse] to surrender it. [Westinghouse] did so, being compensated by part of the funds paid by plaintiffs. The warrant having been thus disposed of, Acquisition purchased all of the issued Cortec shares, "old" Cortec merged into Acquisition, and "new" Cortec emerged as the successor in interest to Acquisition.
 
 
 13
 The district court rejected plaintiffs' argument that this set of facts could result in any § 12(2) liability for Westinghouse as a seller, stating Westinghouse was at most a seller to plaintiffs' seller, i.e., "old" Cortec, which is insufficient for § 12(2) liability, citing Pinter v. Dahl, 486 U.S. 622, 644 n. 21, 108 S.Ct. 2063, 2077 n. 21, 100 L.Ed.2d 658 (1988). The court then considered as an alternative that Westinghouse could be liable under § 12(2) for soliciting plaintiffs' purchase of old Cortec, but rejected the solicitation theory, observing that there was no allegation in the complaint of such solicitation by Westinghouse. The trial court also held without further explanation that plaintiffs' claim under § 12(2) against Westinghouse should be dismissed without leave to replead. A judgment dismissing plaintiffs' claim against Westinghouse under § 12(2) with prejudice was entered accordingly on January 31, 1991. We reverse and remand to allow plaintiffs an opportunity to replead the solicitation aspect of their § 12(2) claim against Westinghouse, and otherwise affirm the judgment of the district court.
 
 DISCUSSION
 
 14
 I The Scope of Review on a Motion to Dismiss
 
 
 15
 In arguing that it could not be characterized as a statutory seller for § 12(2) purposes, defendant Westinghouse attached to its motion papers copies of its warrant, the Bowles' offering memorandum, and the Stock Purchase Agreement. Plaintiffs argued, relying on our opinion in Cosmas v. Hassett, 886 F.2d 8 (2d Cir.1989), that these documents could not be considered by the district court on a motion to dismiss because they were referred to--but not attached to nor incorporated by reference--in plaintiffs' complaint. Westinghouse argued that these documents could be considered under Field v. Trump, 850 F.2d 938 (2d Cir.1988), cert. denied, 489 U.S. 1012, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989). Noting the seemingly contradictory positions taken by our decisions, the district court neatly avoided the difficulty by relying solely on plaintiffs' complaint.
 
 
 16
 On appeal, plaintiffs renew their contention that reliance on these outside materials was improper and insist the district court implicitly did rely on them in dismissing their claims. In light of the trial court's clear statement disavowing any reliance on the documents in question, and the lack of any indication in its opinion to cast that statement into doubt, we reject plaintiffs' assertion. We next address whether the trial court could examine and rely on the Westinghouse warrant, the Bowles' offering memorandum, and the Stock Purchase Agreement in deciding the Rule 12(b)(6) motion before it.
 
 
 17
 A brief discussion of the Federal Rules will be helpful in placing this subject in perspective. Every defense to a claim for relief must be asserted in a responsive pleading, if one is required, with seven enumerated exceptions. The seven exception list matter that may be challenged by motion, of which the "failure to state a claim upon which relief can be granted" is the sixth. Fed.R.Civ.P. 12(b)(6). The Rule goes on to state that when a motion is made under Rule 12(b)(6) and "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56," giving all parties a reasonable opportunity to present pertinent material under that Rule. See Rule 12(b)(6).
 
 
 18
 The problem arises when a party seeks to introduce affidavits, depositions or other extraneous documents not set forth in the complaint for the court to consider on a Rule 12(b)(6) motion. We suggested nearly 50 years ago that such motions be treated as motions for summary judgment and disposed of as such. See Samara v. United States, 129 F.2d 594, 597 (2d Cir.), cert. denied, 317 U.S. 686, 63 S.Ct. 258, 87 L.Ed. 549 (1942); Boro Hall Corp. v. General Motors Corp., 124 F.2d 822, 823 (2d Cir.1942), cert. denied, 317 U.S. 695, 63 S.Ct. 436, 87 L.Ed. 556 (1943); Fed.R.Civ.P. 12, 1946 Amendment, Notes of Advisory Committee. This provision of the Rules relating to extraneous material that causes a Rule 12(b)(6) motion to be translated into a Rule 56 motion is now mandatory. See Carter v. Stanton, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972) (per curiam).
 
 
 19
 Case law engrafted some flesh on the bare bones of Rule 12(b)(6). Complaints, for example, are not dismissed unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); accord Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Because a Rule 12(b)(6) motion challenges the facts alleged on the face of the complaint, see Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir.1984), or, more accurately, the sufficiency of the statements in the complaint, the question is what matters are to be considered in assessing the complaint's sufficiency.
 
 
 20
 Rule 10(c) provides: "Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed.R.Civ.P. 10(c). Relying on Rule 10(c), we have held that the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. See Cosmas, 886 F.2d at 13; Goldman v. Belden, 754 F.2d 1059, 1065-66 (2d Cir.1985).
 
 
 21
 In addition, we have held that when a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure. See I. Meyer Pincus and Assoc. v. Oppenheimer & Co., Inc., 936 F.2d 759, 762 (2d Cir.1991) (prospectus). Similarly, when a district court decides a motion to dismiss a complaint alleging securities fraud, it may review and consider public disclosure documents required by law to be and which actually have been filed with the SEC, particularly where plaintiff has been put on notice by defendant's proffer of these public documents. See Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir.1991); Fed.R.Evid. 201(e) (party entitled upon timely request to opportunity to be heard regarding propriety of court taking judicial notice).
 
 
 22
 A finding that plaintiff has had notice of documents used by defendant in a 12(b)(6) motion is significant since, as noted earlier, the problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason--requiring notice so that the party against whom the motion to dismiss is made may respond--that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions. Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.
 
 
 23
 We turn now to the case at hand. Despite the fact that the documents attached to defendant Westinghouse's motion to dismiss were neither public disclosure documents required by law to be filed with the SEC, nor documents actually filed with the SEC, nor attached as exhibits to the complaint or incorporated by reference in it, the district court was entitled to consider them in deciding the motion to dismiss. The stock purchase agreement, Bowles' offering memorandum, and the warrant were documents plaintiffs had either in its possession or had knowledge of and upon which they relied in bringing suit. It did not lack notice of those documents; these papers were integral to its complaint. Consequently, though the district court, in light of what it viewed as conflicting precedents in this Circuit, declined to consider these exhibits, it could have viewed them on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim.
 
 
 24
 II Dismissal of the Complaint without Leave to Replead
 
 
 25
 After evaluating the complaint, the trial court found plaintiffs had, at most, alleged Westinghouse was a seller to plaintiffs' seller--old Cortec--and that the complaint had failed to present proof of solicitation of the plaintiffs by Westinghouse. It concluded these allegations were insufficient to create § 12(2) liability against Westinghouse, and therefore dismissed the complaint in its entirety as to that defendant. Plaintiffs contend it was error to dismiss their § 12(2) claim against Westinghouse, and that at the very least they should have been granted leave to replead.
 
 
 26
 We begin with a statement of the rule. A party may amend its pleading once as a matter of right before a responsive pleading has been served, otherwise by leave of the court, and such "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). It is the usual practice upon granting a motion to dismiss to allow leave to replead. See, e.g., Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir.1990); Devaney v. Chester, 813 F.2d 566, 569 (2d Cir.1987); Pross v. Katz, 784 F.2d 455, 459-60 (2d Cir.1986). Although leave to replead is within the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion. See Ronzani, 899 F.2d at 198.
 
 
 27
 Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice. See, e.g., Spain v. Ball, 928 F.2d 61, 62-63 (2d Cir.1991) (per curiam). Before deciding therefore whether the district court abused its discretion in denying plaintiffs leave to replead their § 12(2) claim, we must first decide whether plaintiffs can allege any facts sufficient to support that claim. In order to do so we explore the bases for § 12(2) liability.
 
 A. "Seller" Liability
 
 28
 Section 12(2) of the 1933 Securities Act provides
 
 
 29
 Any person who ... offers or sells a security ... by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him.... (emphasis added).
 
 
 30
 15 U.S.C. § 771(2) (1988). In Pinter v. Dahl, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), the Supreme Court clarified the meaning of the phrase "offers or sells" under § 12(1) of the 1933 Act. As the language of §§ 12(1) and 12(2) is identical, the Pinter analysis applies to claims arising under § 12(2) as well. See Wilson v. Saintine Exploration and Drilling Corp., 872 F.2d 1124, 1126 (2d Cir.1989); Capri v. Murphy, 856 F.2d 473, 478 (2d Cir.1988). The Supreme Court observed: "At the very least, ... the language of § 12(1) contemplates a buyer-seller relationship not unlike traditional contractual privity. Thus, it is settled that § 12(1) imposes liability on the owner who passed title, or other interest in the security, to the buyer for value." Pinter, 486 U.S. at 642, 108 S.Ct. at 2076. The Court explored further what kinds of activity may fall within the definition of "offer" or "sell" in the statute.
 
 
 31
 To do that it looked to the statute itself, which defines "sale" or "sell" to include "every contract of sale or disposition of a security or interest in a security, for value," and the terms "offer to sell," "offer for sale," or "offer" to include "every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value." 15 U.S.C. § 77(b)(3) (1988). The Court therefore concluded that "the range of persons potentially liable under § 12(1) is not limited to persons who pass title." 486 U.S. at 643, 108 S.Ct. at 2076.
 
 
 32
 The Supreme Court acknowledged that focusing on these introductory terms--to define the extent of seller liability--discussed only a portion of the topic. See id. The second clause of § 12(1) provides that only a defendant from whom the plaintiff purchased securities may be liable, and this provision circumscribes the number of potential sellers. Id. at 643-44, 108 S.Ct. at 2076-77. As noted in a footnote, "[o]ne important consequence of this provision is that § 12(1) imposes liability on only the buyer's immediate seller; remote purchasers are precluded from bringing actions against remote sellers. Thus, a buyer cannot recover against his seller's seller." Id. at 644 n. 21, 108 S.Ct. at 2077 n. 21 (emphasis added).
 
 
 33
 At the time of the subject transaction, Westinghouse owned a warrant which if exercised entitled it, on conversion, to 111 shares of old Cortec. The warrant had never been exercised. Westinghouse held no shares of old Cortec. In order to consummate plaintiffs' purchase of old Cortec, as we earlier noted, the parties had the warrant's issuer, old Cortec, request Westinghouse to surrender it. Westinghouse did so and was compensated from the funds paid by plaintiffs to old Cortec. The warrant having been extinguished, Acquisition proceeded to purchase all of the issued old Cortec shares, old Cortec merged into Acquisition, and "new" Cortec emerged as the successor to Acquisition.
 
 
 34
 As these facts make clear, Westinghouse was a seller to old Cortec, not to plaintiffs. Under Pinter, plaintiffs may not therefore assert a claim against their seller's seller. Moreover, as the nature of the above transaction is undisputed--plaintiffs dispute the legal significance that should be given these facts, not the facts themselves--no facts may be alleged that would cause Westinghouse to be liable under Pinter for § 12(2) "seller" liability. Hence, Judge Haight correctly dismissed plaintiffs' § 12(2) claim with prejudice insofar as it was based on seller liability.
 
 
 35
 Plaintiffs' view that were Westinghouse to prevail it would mean that a party could intentionally structure a transaction to avoid exposure under § 12(2) is unpersuasive. It was plaintiffs not the district court who were blind to, as plaintiffs term it, the economic reality of this transaction. It is in the nature of the marketplace that parties take into account the risk of liability under the securities laws--and, conversely, the ability to hold those with whom they transact business liable--when calculating the costs and benefits of entering into a particular transaction. Our decision will not protect those who seek to commit fraud by hiding the fact of their ownership and centralizing their shares in one judgment-proof seller's hands immediately prior to the transfer to the ultimate purchaser, as plaintiffs suggest. The instant holding simply follows Pinter on the limits of seller liability under § 12(2). If, in the future, a prospective buyer is unwilling to allow its seller's seller to escape responsibility for potential § 12(2) liability, it must design its deal accordingly. Plaintiffs simply failed to do so here, and cannot now change the terms of the bargain they struck.
 
 B. Solicitation Liability
 
 36
 Pinter declined to read the purchase requirement of § 12 as restricting liability simply to the owner of the security. See id. at 644, 108 S.Ct. at 2077. The statutory definition does not exclude, it noted, solicitation of a sale as conduct that may result in liability: Section 12 liability has since the enactment of the Securities Act been applied to brokers and others who solicit securities purchases on a regular basis. So construing § 12's statutory seller language furthers the purpose of the Act, and a party that successfully solicits a purchase is subject to liability as a statutory seller. Id. at 646, 108 S.Ct. at 2078. Such liability "extends only to the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." Id. at 647, 108 S.Ct. at 2079. Thus, an offeror of securities may be liable under § 12(2) if it sought to sell the security to benefit itself or the securities' owner financially. See Wilson, 872 F.2d at 1126. In applying these principles to the case at hand, the district court dismissed plaintiffs' claim, finding that aside from the fact that Bowles issued the offering memorandum on behalf of the owners of old Cortec, there was no allegation that Westinghouse solicited plaintiffs in any fashion or participated in the fraudulent action alleged.
 
 
 37
 On the contrary, a careful reading of the complaint shows that it alleged Westinghouse held a warrant to purchase 111 shares of "old" Cortec stock that it received in connection with Westinghouse's financing of one of the Cortec divisions, that the offering memorandum stated that Bowles was acting on behalf of the owners of Cortec, including Westinghouse, and that the Stock Purchase Agreement's representations and warranties by Dubin Clark were made on behalf of a number of defendants, again including defendant Westinghouse. Most important, after alleging that Westinghouse sold its warrant as part of the transaction complained of, plaintiffs further claimed that Westinghouse solicited plaintiffs' purchase of the Cortec shares and the warrant.
 
 
 38
 Obviously, where a defect in the complaint cannot be cured by amendment, it would be futile to grant leave to amend. See Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1198-99 (2d Cir.1989). But, we think it an abuse of discretion to deny leave to replead on the solicitation aspect of plaintiffs' complaint. Here, there was a plain allegation that Westinghouse solicited the sale for its own financial interests. The district court's contrary conclusion incorrectly caused it to vary from the usual practice. Moreover, there is no suggestion from the averments of the complaint that an amendment would not supply the facts required to support the allegations and to cure the defect. Under these circumstances, plaintiffs should be granted leave to replead to assert facts, if such exist, that would show that Westinghouse solicited the purchase of old Cortec for its own financial gain.
 
 CONCLUSION
 
 39
 We affirm the order to dismiss the complaint and to deny leave to replead on § 12(2) seller liability, but reverse the portion of the order insofar as it denied plaintiffs leave to replead their § 12(2) claim alleging Westinghouse solicited their purchase of old Cortec. The judgment of the district court is accordingly affirmed, in part, reversed, in part, and the case is remanded for further proceedings.
 
 
 
 *
 Hon. Daniel M. Friedman, United States Circuit Judge for the Federal Circuit, sitting by designation