Harold FALIK, Plaintiff,

v.

**PARKER DURYEE ROSOFF & HAFT, et al., Defendants.**

No. 94 Civ. 4266 (CBM).

United States District Court,
S.D. New York.

Dec. 5, 1994.

D. Graham C. Clark, Jr., Minneapolis, MN, for plaintiff.

Lowenstein, Sandler, Kohl, Fisher & Boylan, Virginia A. Lazala, Roseland, NJ, for defendants Eugene I. Davis, Donald Dvorkin, and Geoffrey P. Jurick.

Parker, Duryee, Rosoff & Haft, Martin Stein, New York City, for defendants Jay Haft, Martin Stein, and Parker, Duryee, Rosoff & Haft.

## *AMENDED OPINION ON MOTIONS TO DISMISS*

### MEMORANDUM OPINION

MOTLEY, District Judge.

## I. BACKGROUND

This case involves allegations of securities fraud and pendant state law claims.[1] Plaintiff, Harold Falik, is the former Chief Financial Officer of Emerson Radio Corporation ("Emerson"). (¶ 10).[2] Defendants Jay Haft, Eugene I. Davis, Donald Dvorkin, Lyle E. Gramley, Geoffrey P. Jurick, and Walter F. Mondale were alleged to be, at all relevant times, officers or directors of Emerson. (¶¶ 3–4). However, Defendants Gramley and Mondale have thus far not appeared in this action. Defendant Parker Duryee Rosoff & Haft ("Parker Duryee") is a New York law firm. (¶ 2). Defendant Martin Stein is a member of this firm. (¶ 5). Defendant Haft, in addition to his position as a director at Emerson, is also a member of Parker Duryee. (¶ 3).

### A. The *Karr* Litigation.

Falik asserts that he was the victim of two distinct but connected frauds. The first of these arose out of litigation in a matter that was filed in this District in 1990, *Karr v. Emerson Radio corp., et al.*, 90 Civ. 1315 (TPG). (¶¶ 10–11). Emerson and Falik were among the defendants named in the *Karr* case which was filed by investors in a real estate syndicate in which Emerson had been a principal. (¶¶ 12–13). The suit charged fraud based upon Emerson's failure to provide these investors with notice of its withdrawal from the syndicate, a material fact. (¶¶ 13–14). Jay Haft, a defendant in the instant matter, failed to advise Emerson of its duty to disclose this withdrawal. (¶ 14). On or about February 19, 1990, after *Karr* was filed, Parker Duryee and Martin Stein undertook to act as legal representatives for both Emerson and Falik. (¶ 15).

Stein and Haft assured Falik that they and their firm would act in Falik's best interests in the *Karr* matter and would, in connection therewith, exercise the reasonable care, skill, and diligence exercised by attorneys in the ordinary discharge of their duties under similar circumstances. (¶¶ 16, 18–19). Stein, Haft, and Parker Duryee made these representations with the intention that Falik act upon them, and Falik indeed acted upon them and retained Stein and Haft as his attorneys for the *Karr* case. (¶¶ 21–22). However, from the time of the initiation of *Karr*, Haft and Stein were aware of a conflict of interest between Emerson and Falik, as well as one between Haft, Stein, and Parker Duryee on the one hand and Emerson and

---

1. For purposes of these motions to dismiss, the well-pleaded allegations of the Amended Complaint are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421–422, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969); *Frasier v. General Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir.1991). However, "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *L'Europeene de Banque v. La Republica de Venezuela*, 700 F.Supp. 114, 122 (S.D.N.Y.1988) (citation omitted).

2. References to relevant paragraphs in the Amended Complaint are cited to as "(¶ __)."

Falik on the other. (¶¶ 23–25). For a period of over two and one-half years, Stein and Haft deceived Falik while pursuing their own and Emerson's interests at the expense of Falik's. (¶ 27). For example, during this time, Haft and Stein repeatedly advised Emerson to shift some or all of its liability to Falik. (¶ 28). Moreover, while they assured Falik that his legal fees in *Karr* were being paid by a third party pursuant to an indemnification agreement required under Emerson's by-laws, Haft and Stein failed to require such third-party payments. (¶¶ 34–36).

It was not until October 7, 1992 that Haft and Stein revealed the conflicts to Falik by informing him by letter that following a pre-trial conference they were entering into settlement negotiations on behalf of Emerson but not on behalf of Falik. (¶ 30). The same letter explained that while *Karr* was to be ready for trial by December 1, 1992, Stein, Haft, and their firm were withdrawing as Falik's counsel due to the conflict. (¶ 31). As a result, Falik was forced to retain the law firm of Anderson Kill Olick and Oshinsky, and he incurred legal fees of $262,100. (¶¶ 37, 40). Moreover, Falik was ultimately subjected to a judgment of $1 million. (¶ 42).

The facts of the *Karr* litigation form the basis of Counts II, IV, and V, as well as part of Count III of Falik's amended complaint. Count II alleges the facts described above, and asserts that Parker Duryee's, Haft's and Stein's knowing and willful failure to advise Falik of the conflicts of interest inherent in *Karr*, as well as Defendants' actions against Falik's interests constitute legal malpractice. (¶¶ 67–74). Count IV relies upon the same set of facts and asserts that Defendants' conduct constitutes a breach of contract. (¶¶ 82–85). Count V also relies on these facts and asserts that Defendants have violated § 487 of the New York Judiciary Law. (¶¶ 86–88). *See* N.Y.Judiciary Law § 487 (McKinney 1983) (misconduct by attorneys). Count III sounds in common law fraud, and relies in part on the facts of the *Karr* litigation. (¶¶ 75–81).

B. The Securities Fraud.

The second alleged fraud involves a stock option exercised by Falik. On April 15, 1991, pursuant to a contractual arrangement with Emerson, Falik tendered a check to Emerson for $120,960 in payment for exercise of an option to purchase 56,000 unrestricted, SEC registered, and freely transferable shares of Emerson common stock. (¶ 43). At a subsequent meeting of Emerson's board of directors on June 11, 1991, upon a motion made by Defendant Haft and seconded by Defendant Gramley, the board approved the April transaction and voted either to issue the above-mentioned shares to Falik or to refund his payment in full. (¶ 44). This meeting was attended by all individual defendants in this case. (¶ 45).

Despite the board action and following Falik's repeated requests for his shares, in May 1992 Emerson transferred to Falik a certificate representing ownership of 56,000 shares of common which certificate bore restrictive legends. (¶ 46). The shares transferred were not SEC registered and not freely transferable as promised. (¶ 46). This occurred despite the Emerson directors' knowledge that Falik intended to sell the shares for a profit at the approximate market price of $168,000. (¶ 46).

In July and August 1992, Falik spoke with Defendant Dvorkin on several occasions. (¶ 48) Dvorkin, who agreed that Falik's demands were legitimate, promised to arrange a meeting between Falik and Defendant Davis to address Falik's demands. (¶ 48). At the ensuing meeting, Defendant Davis promised to discuss with Defendant Jurick the possibility of Jurick's purchasing or arranging the purchase of Falik's restricted shares. (¶ 49). Davis promised further that if Dvorkin could not thus resolve Falik's problem, Emerson would issue the required unrestricted shares to Falik after Emerson filed its 1992 10–K report in April 1993. (¶ 49) Falik was further encouraged in May 1993 when Emerson issued press releases announcing its imminent registration and issuance of common stock. (¶ 50). However, in late 1993, Emerson filed a petition with the United States Bankruptcy Court for the District of New Jersey seeking Chapter 11 protection. (¶ 52). Thus, in December 1993, following this filing, Falik sold his 56,000 restricted shares for $0.03 per share. (¶ 52).

Contrary to their repeated assurances to Falik made by telephone and otherwise, defendants never intended to issue unrestricted, registered, freely transferable shares to Falik. (¶ 47). Thus, in Count I of the Amended Complaint, Falik charges that the conduct of the Emerson directors violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1988), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder. (¶¶ 55–66).

### C.  The Motions to dismiss.

Two separate motions to dismiss the complaint pursuant to Rules 12(b)(1), 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure have been filed. Defendants Davis, Dvorkin, and Jurick (the "Director Defendants") filed one, and Defendants Parker Duryee, Haft, and Stein (the "Law Firm Defendants") filed the other. Plaintiff Falik filed his Amended Complaint along with his Memorandum of Law in Opposition to Defendant's Motion to Dismiss. Since the two motions substantially overlap, the common issues are addressed first.

### II.  The Standard For Dismissal Under Rule 12(b)(6).

A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if it appears beyond doubt that plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir.1985); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993); *Seagoing Uniform Corp. v. Texaco, Inc.*, 705 F.Supp. 918, 927 (S.D.N.Y.1989). Therefore, on a motion to dismiss, all factual allegations of the complaint must be accepted as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Frasier v. General Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir.1991), and all reasonable inferences must be made in plaintiffs' favor. *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989); *Meilke v. Constellation Bancorp*, No. 90–3915, 1992 WL 47342, at *1 (S.D.N.Y. Mar. 4, 1992). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d at 1067 (citation omitted).

### III.  The Statute of Limitations Under Rule 10b–5.

Both moving groups of defendants assert that Falik's securities fraud claim is time-barred. The principal case concerning the statute of limitations for 10b–5 cases is *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). The *Lampf* Court concluded that "[l]itigation instituted pursuant to § 10(b) and Rule 10b–5 therefore must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Id.* at 364, 111 S.Ct. at 2782 (footnote omitted). Moreover, the Second Circuit recently announced that under *Lampf* " 'discovery' ... includes constructive or inquiry notice, as well as actual notice." *Menowitz v. Brown*, 991 F.2d 36, 41 (2d Cir.1993). *See also Dodds v. Cigna Securities, Inc.*, 12 F.3d 346, 350 (2d Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1401, 128 L.Ed.2d 74 (1994). Thus, in applying *Lampf*, a court must determine when the plaintiff "obtain[ed] actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge." *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1042 (2d Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 494, 121 L.Ed.2d 432 (1992). *See also Jackson Nat'l Life Ins. v. Merrill Lynch & Co.*, 32 F.3d 697, 701 (2d Cir.1994); *In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litig.*, 815 F.Supp. 620, 638 (S.D.N.Y.1993) ("To satisfy [the inquiry notice] test, the knowledge of the alleged fraud imputed to a plaintiff must rise to the level of the probable and not merely of the possible.").

Under the doctrine of equitable tolling, federal courts have traditionally held that "the active concealment of fraudulent conduct tolls the statute of limitations in favor of the defrauded party until such time as he actually knew of the fraudulent conduct of the opposing party." *Robertson v. Seid-*

*man & Seidman,* 609 F.2d 583, 593 (2d Cir. 1979). However, since *Lampf,* the Second Circuit has held that equitable tolling stays the statute of limitations under Rule 10b–5 only as long as the defrauded party satisfies his duty to exercise reasonable diligence to discover the fraud. *See Dodds,* 12 F.3d at 350; *Siemens Solar Indus. v. Atlantic Richfield Co.,* No. 93 Civ. 1126 (LAP), 1994 WL 86368, at *5 (S.D.N.Y. Mar. 16, 1994). Moreover, once a plaintiff has constructive notice of a fraud, neither reassurances from the defendants nor fraudulent concealment on their part will relieve the plaintiff of this duty of reasonable diligence. *In re Integrated Resources,* 815 F.Supp. at 640. *See also Zola v. Gordon,* 685 F.Supp. 354, 366, 368 (S.D.N.Y.1988).

█ In the instant matter, Falik, the former Chief Financial Officer of Emerson, filed his original complaint on June 9, 1994. The question then is—what did Falik know and when did he know it? As of early June 1993, Plaintiff was aware of several key facts. First, despite the Emerson board's June 11, 1991 approval of Falik's exercise of his stock option and Falik's repeated requests for his shares, Falik did not receive any stock certificates until May of 1992, and then what he received was a certificate for restricted, unregistered shares.[3] Second, as of early October 1992, Falik knew of the conflicts between himself and Emerson, Parker Duryee, Haft, and Stein in the *Karr* litigation; thus, he should have been aware that Emerson and its directors may not have had his best interests in mind. Third, Falik had reason to

know that despite Defendant Davis's promise, Emerson was not rushing to issue Falik unrestricted shares after filing its 1992 10–K report in April 1993. Taken together, these facts should perhaps have raised some doubts in Falik's mind sufficient to trigger a duty to inquire further. Indeed, the court feels compelled to note that Plaintiff's portrayal of himself as a naïve outsider is not persuasive. As Emerson's recently departed Chief Financial Officer, he was likely to have been well-informed about the company's financial structure and condition. Given this material fact, Emerson's failure to deliver the promised unrestricted shares and the ensuing delays should have raised more red flags for Falik than they might have for a true outside investor.

█ By attempting to resolve his grievance through speaking with Defendants Dvorkin and Davis, Falik at least made *some* inquiries into the situation regarding his stock. Moreover, Falik asserts that his hopes of receiving the promised shares were buoyed by Emerson's May 1993 press releases.[4] Thus, this is not a case where a plaintiff who was clearly on inquiry notice failed to do anything at all to satisfy his duty of reasonable diligence. *Cf. Zola,* 685 F.Supp. at 368 (holding that where plaintiffs present no evidence that they undertook any inquiry the court must conclude "that plaintiffs remained narcose").

On the other hand, especially after he was forced to retain new counsel in the *Karr*

---

**3.** In their motion papers, Plaintiff and the Law Firm Defendants debate about Plaintiff's claim that the Emerson directors used a proxy contest as an excuse for failing to replace the restricted shares with unrestricted shares. (Pl.'s Mem. Opp'n Def.'s Mot.Dismiss at 4; [Law Firm] Def.'s Reply Mem.Supp.Mot.Dismiss at 4.) The Law Firm Defendants seek to introduce one of Emerson's SEC filings to support their position, and cite *Kramer v. Time Warner Inc.,* 937 F.2d 767 (2d Cir.1991) as authority for the ability of this court to consider such filings when the Plaintiff has not included them with his complaint as exhibits or incorporated them therein by reference. ([Law Firm] Def.'s Reply Mem.Supp.Mot.Dismiss at 4 & n. 3.)

There are two reasons why the court cannot now consider the Emerson filing. First, the issue of the proxy contest is not raised anywhere in Plaintiff's Amended Complaint. As such, it is not

appropriate to examine facts related to such a proxy contest in the context of a motion to dismiss under Rule 12(b)(6). Second, the *Kramer* court allowed the examination of SEC filings that were not included as exhibits to the complaint or incorporated therein by reference only where such documents were the very documents that the plaintiff alleged were misleading. *See* 937 F.2d at 774.

**4.** Plaintiff has attached three Emerson press releases as Exhibit 5 to his Amended Complaint. The court must note that one of the three bears a 1992 date. Since application of the 10b–5 statute of limitations in this case depends on whether Falik had constructive notice in June of 1993 of the alleged securities fraud, the 1992 press release is of no relevance.

matter, Falik might have done more to inquire more zealously. *Cf. Robertson,* 609 F.2d at 588 (noting that plaintiff who admitted being on inquiry notice had hired his own lawyer, cooperated with the SEC, and intervened in prior, related litigation). Even if one concedes that Falik initially satisfied his duty of inquiry by contacting Defendants Dvorkin and Davis during the summer of 1992 and that these inquiries were met by fraudulent concealment, the May 1993 press releases which Falik has attached as Exhibit 5 to his Amended Complaint and upon which he relies should have done more to raise storm warnings than to put Falik at ease. Examination of these documents reveals that they describe the terms of "agreements in principle" for a massive financial restructuring at Emerson designed to enable the company to "'return to profitability.'" (Am. Compl., Ex. 5.) Given Falik's position as Emerson's recent former Chief Financial Officer, it strains credibility to suggest that he could have interpreted these press releases as anything other than an announcement of a then unconsummated plan to stave off Emerson's eventual bankruptcy. Moreover, while the first release, dated May 11, 1993, stated that Emerson "contemplate[d] offering shareholders an opportunity to purchase shares in a rights offering of Emerson's Common Stock on terms to be determined," (Am.Compl., Ex. 5), Falik could not *reasonably* have interpreted this as any kind of reassurance that his then almost two year-old grievance was about to be resolved. Thus, as of May 11, 1993, Falik again came under a duty to inquire. Since this date was after the point at which he had retained his own counsel in the *Karr* matter, Falik was under a duty to at least have that counsel also inquire into the whereabouts of the unrestricted shares Falik was owed. Instead, Falik appears to have remained narcose. Since the instant case was filed nearly thirteen months after the first of the press releases was issued, the court must conclude that Falik's only federal claim is time barred.

### IV. The Plaintiff Has Pleaded Fraud With Adequate Particularity Under Rule 9(b).

Defendants assert that Plaintiff has failed to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Since this defense goes to both the federal and some of the state law claims in the Amended Complaint, these are taken up in turn below.

Rule 9(b) states:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally. Fed.R.Civ.P. 9(b).

■ This pleading requirement is designed to: (1) provide defendants with fair notice of plaintiffs' claim, to enable preparation of a defense, (2) protect defendants from harm to their reputation or goodwill, and (3) reduce the number of strike suits. *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989); *DiVittorio v. Equidyne Extractive Indus.,* 822 F.2d 1242, 1247 (2d Cir.1987). "Strike suits in this area ... permit plaintiffs with groundless claims to abuse liberal federal discovery provisions, with the right to do so representing 'in terrorem' increments in the settlement values of the alleged claims." *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir.1982) (citing *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 740–41, 95 S.Ct. 1917, 1928, 44 L.Ed.2d 539 (1975)).

To satisfy Rule 9(b), a "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respects in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas,* 886 F.2d at 11. At the same time, Rule 9(b)'s requirement of particularity must be harmonized with the flexibility in pleading permitted under Rule 8(a) of the Federal Rules of Civil Procedure, "which requires only a 'short and plain statement' of the claims for relief." *Ouaknine v. MacFarlane,* 897 F.2d 75, 79 (2d Cir.1990) (quoting Fed. R.Civ.P. 8(a)). In applying Rule 9(b), a court should employ the same type of scrutiny as it would under Rule 12(b)(6). *See Mills v.*

*Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993).

In *Ouaknine,* the Second Circuit explained that "[t]o pass muster under rule 9(b),.... [a]lthough scienter need not be alleged with great specificity, there must be some factual basis for conclusory allegations of intent. Allegations of scienter are sufficient if supported by facts giving rise to a 'strong inference' of fraudulent intent.... Allegations of scienter are not subjected to the more exacting consideration applied to the other components of fraud. They are sufficient where ... the allegations lie peculiarly within the opposing parties' knowledge and are accompanied by information that raises a strong inference of fraud." 897 F.2d at 79–81 (citations omitted). Scienter can be pleaded by alleging "facts showing a motive for committing fraud and a clear opportunity for doing so[, or ...] by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), *overruled on other grounds, United States v. Indelicato,* 865 F.2d 1370 (2d Cir.1989) (en banc). *See also Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir. 1989). Finally, where the complaint charges multiple defendants with fraud, it "should inform each defendant of the nature of his alleged participation in the fraud." *Divittorio v. Equidyne Extractive Indus.,* 822 F.2d 1242, 1247 (2d Cir.1987).

With regard to Falik's securities fraud claim, he has clearly satisfied the time-place-speaker requirement with regard to Defendant's Haft, Gramley, Dvorkin and Davis. As for Defendants Jurick and Mondale, Falik has established only that they were present in their capacities as directors at the June 11, 1991 meeting of Emerson's board. The connection to Defendants Stein and Parker Duryee is even more questionable. While Mr. Stein is alleged to have been present at the June 11, 1991 meeting, there is no indication in the Amended Complaint or its attached exhibits that Stein in any way participated in the business conducted at that meeting.

As for raising a strong inference of fraud, Plaintiff may have more difficulties. He relies mainly on the directors' failure to deliver the promised unrestricted shares and on the one year delay between the board's vote and the delivery to Falik of the restricted shares he received. However, mere non-performance does not demonstrate fraud unless "when the promise was made, the defendant[s] secretly intended not to perform or knew that [they] could not perform." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir.1993). While Falik suggests that fraud is the only plausible explanation for the non-performance of his stock option exercise, it is important to bear in mind that all of these events transpired while Emerson apparently was spiraling towards its eventual bankruptcy in late 1993. Since collapsing companies often see their management of such matters as stock transactions suffer, fraud is not the only explanation of Emerson's non-performance that is within the realm of the conceivable.

With regard to the motive-and-opportunity analysis, a very generous reading of the Amended Complaint suggests that the stock fraud may have been perpetrated in order to keep Falik around long enough to permit Emerson to shift its liability in the *Karr* matter. As compared to a more obvious motive for fraud such as profit, the motive Falik suggests is somewhat strained. Nevertheless, at this early stage in the litigation it may be sufficient.

As for the state law claims of fraud and of violation of § 487 of the New York Judiciary Law, Falik's pleadings here may be more adequate. The common law fraud claim is based both on the stock transaction and on Haft's and Stein's alleged malpractice in connection with *Karr.* The § 487 claim is rooted only in the malpractice allegations. Plaintiff contends that there were conflicts of interest involved in *Karr* that should have been apparent to Haft and Stein from the beginning of that case. Based on this, Falik reasons that defendants' failure to inform him of these conflicts until they suggested at the last hour that he seek other counsel raises

the required inference of fraud.[5] This, at least, seems more plausible than Falik's arguments concerning his securities law claim.

## V. Supplemental Jurisdiction

■ Defendants Parker Duryee, Haft and Stein argue that the court lacks subject matter jurisdiction over Plaintiff's state law claims because they are not sufficiently related to the federal claim for securities fraud. The germinal case in this area is *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) which states that for a federal court to exercise pendant jurisdiction over state law claims, "[t]he state and federal claims must derive from a common denominator of operative fact." While such issues are now governed under the rubric of "supplemental jurisdiction" in 28 U.S.C. § 1367(a), this statute has been treated as a codification of the *Gibbs* doctrine. *See Promisel v. First American Artificial Flowers, Inc.*, 943 F.2d 251, 254 (2d Cir.1991), *cert. denied*, 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992). At least in the securities law context, application of the *Gibbs* standard requires a fairly substantial factual overlap between the state and federal claims. *See First Interregional Equity Corp. v. Haughton*, 805 F.Supp. 196, 201 (S.D.N.Y.1992).

Other than the fact that both Falik and Emerson are involved in both alleged fraudulent schemes, the only significant link Falik posits is that of Defendant Haft. The latter is alleged to have been a player in both schemes. However, as noted above, Falik suggests that the securities fraud was committed to facilitate the legal malpractice in *Karr*. If he intends to attempt to prove

scienter for his Rule 10b–5 claim by proving his allegations about *Karr* as part of a motive-and-opportunity argument, then Falik would indeed "be expected to try ... all [of his claims] in one judicial proceeding." *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138. The Defendants' suggestion that, under 28 U.S.C. § 1367(c)(2), the court should decline to exercise supplemental jurisdiction because the state law claims substantially predominate over Falik's federal claim ignore the possibility that Falik may pursue this theory of the case.

Nevertheless, as the Defendants point out, it is still within the court's discretion to decline to exercise supplemental jurisdiction in this case. Section 1367(c)(3) permits the court to so decline jurisdiction when it has "dismissed all claims over which it has original jurisdiction." *28 U.S.C. § 1367(c)(3) (1990)*. *See also Castellano v. Board of Trustees of the Police Officers' Variable Supplements Fund*, 937 F.2d 752, 758 (2d Cir. 1991) (" 'Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.' " (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966))), *cert. denied*, 502 U.S. 941, 112 S.Ct. 378, 116 L.Ed.2d 329 (1991). Since, as noted above, Falik's only federal claim is time barred, there is no sound reason for the court to exercise jurisdiction over his pendant state law claims.

## VI. Emerson's bankruptcy proceedings.

Defendants Davis, Dvorkin and Jurick also contend that Plaintiff's claims against them

---

**5.** In their Reply Memorandum, the Law Firm Defendants raise factual challenges as to when the conflicts of interest in *Karr* arose. ([Law Firm] Def.'s Reply Mem.Supp.Mot.Dismiss at 14–16.) In support of their position, Defendants seek to introduce part of the court record from *Karr*, and cite *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992) as authority for their ability to do so.

Once again, their are two reasons why the court cannot presently consider the documents Defendants wish to introduce. First, since the instant matter is before the court on a motion to

dismiss under Rule 12(b)(6), Plaintiff's allegations as to when the conflicts of interest arose in *Karr* must be accepted as true. Second, *Cortec Industries* only stands for the narrow proposition that "[w]here plaintiff has actual notice of all the information in the [defendant]'s papers and has relied upon these documents in framing the complaint," 949 F.2d at 48, then a court that is determining a 12(b)(6) motion can consider such documents even though the plaintiff has not included them as exhibits to the complaint or incorporated them by reference therein. The Law Firm Defendants have not shown that the *Cortec* prerequisites are satisfied in the instant matter.

are barred by res judicata based on earlier litigation connected to Emerson's successful bankruptcy petition. Defendants rely specifically on § 12.05 of Emerson's Fourth Amended Plan of Reorganization which provides Emerson's officers and directors with a broad discharge from liability based on their conduct while at Emerson. However, this section expressly allow claimants to file suit based on fraud. While Defendants argue that Falik's securities fraud claim is no more than a breach of contract claim dressed up with conclusory allegations of fraud, the court is not prepared to conclude that Plaintiff's 10b–5 allegations are facially insufficient. Thus, Defendants' res judicata argument is premature. Defendants have also made a motion for this court to impose sanctions on Falik under Rule 11 of the Federal Rules of Civil Procedure. Since this motion is also based on the above-described reasoning concerning Emerson's reorganization, it too is premature.

### Conclusion

For all of the above reasons, Defendants' motions to dismiss are granted.